THOMAS VASSALOTTI vs. BOARD OF APPEALS OF SUDBURY.

Middlesex.  February 4, 1965. — March 3, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

Zoning, "Recorded" lot, Variance

A landowner entitled as of right under the local zoning by-law and the
zoning statute to make a certain use of his land was not entitled to a
zoning variance allowing such use since he did not need a variance
therefor. [662]

Where it appeared that prior to the adoption of a zoning by-law by a
town a subdivision plan showing many lots was recorded at the registry
of deeds and three of the lots, contiguous and each having an area of
about 2500 square feet and a street frontage of about 25 feet, were
conveyed by a single deed, that neither the grantee in such deed nor a
subsequent grantee of the three lots ever owned any land adjacent
thereto, that the zoning by-law, although requiring for lots in a resi-
dential district a minimum area of 40,000 square feet and a minimum
street frontage of 180 feet, allowed the erection of a dwelling on a lot
having less area and frontage if the lot was "shown on a plan or deed
recorded" at the registry, and that the subsequent grantee of the three
lots sought to erect one dwelling on the three lots treated as a single lot,
he was entitled as of right so to do under the exemption in the zoning
by-law and under G. L. c. 40A, § 5A, as amended through St. 1961,
c. 435, § 1.  [661, 662]

BILL IN EQUITY filed in the Superior Court on August 29,
1962.

The plaintiff appealed from a final decree entered after
hearing by Beaudreau, J.

Eugene L. Tougas for the plaintiff.

Alan M. Winsor, Town Counsel, for the defendant, sub-
mitted a brief.

CUTTER, J.  A subdivision plan of a substantial tract of
land in Sudbury was filed in the registry of deeds in 1927.
A sketch of a part of Block B, one of over twenty blocks of
lots appearing on that subdivision plan, is reproduced here-
with (omitting some detailed measurements which do not
affect the present problem).  Lots 11, 12, and 13 (referred

to in the aggregate as the locus),[1] each about twenty-five feet in width and 100 feet in depth, were conveyed to one McPhee in 1932 by the common owner of all the lots shown on the subdivision plan. The deed was recorded. "Since 1932, neither . . . McPhee nor . . . [McPhee's] sole successor in title . . . [Vassalotti, has] ever owned any . . . interest in any lot contiguous to any part of the" locus.

Vassalotti applied in 1962 to the Sudbury board of appeals for a variance for the locus because it "did not comply with the area [40,000 square feet] and frontage [180 feet] requirements of the [Sudbury] zoning by-law." The building proposed by Vassalotti would comply with the side yard, setback, and rear yard requirements of the by-law.[2] The board on August 10, 1962, denied a variance. Vassalotti then filed a bill in equity (see G. L. c. 40A, § 21, as amended) in the Superior Court, praying that the board's decision be annulled and that the board be ordered to "affirm the use of the . . . [locus] for a single-family dwelling." The case was heard upon a statement of agreed facts. The trial judge declined to annul or modify the board's decision. A final decree was entered accordingly. Vassalotti appealed.

Vassalotti seems no longer to seek, if indeed he ever sought, a variance in the usual sense of that term. In-

---

[1] On the original exhibit from which the attached sketch plan was prepared, the external boundaries of the locus were shown by a heavier line than the other lot lines. On the original recorded plan all the lot lines were alike.

[2] In 1939, a comprehensive zoning by-law became effective in Sudbury. Section 17, in effect in 1962 and now, reads in part, "Except as hereinafter provided, no dwelling house and accessory building shall be erected in a [s]ingle [r]esidence [d]istrict unless the area and street frontage of the lot . . . shall conform to the following requirements: In [r]esidence [z]ones 'A' 1, 'A' 2, and 'A' 3, the minimum area of the lot shall be 40,000 square feet, and the minimum frontage of the lot on any street or way shall be 180 feet . . . . [A] A dwelling house and any accessory building may be erected on a lot in any residence district, the area and street frontage of which is less than that prescribed . . . provided, that such *lot is shown on a plan or deed recorded* . . . [in the r]egistry of [d]eeds and that the minimum area and street frontages of said lot are at least equal to those which were required by the provisions of this section in force on the date of the . . . [recording] of said plan; and that there shall be a full compliance with all the provisions of these . . . [b]y-laws relative to set backs and yards . . ." (emphasis supplied). The letter [A] inserted in the above quotation is inserted for convenient reference to the next succeeding sentence.

Vassalotti *v.* Board of Appeals of Sudbury.

stead, he wishes to obtain, by what would be essentially a form of declaratory relief, board or court approval of the locus (consisting of three lots shown on the 1927 plan) as a single lot which may be used for residential building. Apparently he now contends that the locus comes within (a) the sentence beginning at point [A] in the quoted portion of § 17 of the zoning by-law (fn. 2) and (b) the provisions of G. L. c. 40A, § 5A (as amended through St. 1961, c. 435, § 1).[3]

---

[3] Section 5A, as thus amended, reads in part, "Any lot *lawfully laid out by plan or deed duly recorded,* as defined in . . . [G. L. c. 41, § 81L] . . . which complies at the time of such recording . . . with the minimum area, frontage, width, and depth requirements, if any, of any zoning . . . by-law in effect in the . . . town where the land is situated, notwithstanding the adoption or amendment of provisions of a zoning . . . by-law in such . . . town imposing minimum area, frontage, width, depth, or yard requirements, or more than one such requirement, in excess of those in effect at the time of such recording . . . *(1) may thereafter be built upon for residential use if, at the time of the adoption of such requirements or increased requirements, or while building on such lot was otherwise permitted, whichever occurs later, such lot was held in ownership separate from that of adjoining land located in the same residential district,* or (2) may be built upon for residential use for a period of five years from the date of such recording . . . if, at the time of the adoption of such requirements or increased requirements, such lot was held in common ownership with that of adjoining land located in the same residential district; and further provided, in either instance, at the time of building (a) such lot has an area of five thousand square feet or more and a frontage of fifty feet or more, is in a district zoned for residential use, and conforms except as to area, frontage, width, and depth with the applicable provisions of the zoning ordinance or by-law in effect in such . . . town and

We think that the board incorrectly assumes that the original lots 11, 12, and 13 must be viewed as separate from one another for the purposes of this case. The statement of agreed facts shows that these three lots were conveyed to McPhee by a single deed in 1932 and that McPhee and Vassalotti have never owned any adjacent lots. The outside boundaries of these three lots are determinable from the 1927 plan. These circumstances, in the aggregate, sufficiently establish the three lots together as a single lot for purposes of § 17 of the Sudbury by-law and of G. L. c. 40A, § 5A. Under § 5A, the locus meets the definition of a "lot lawfully laid out by plan or deed duly recorded," which under the succeeding italicized clause (1) may be built upon, in the circumstances here presented. Clause (2) of § 5A, in the view we take of the locus as a "lot," has no present application. Under § 17 of the by-law, we view the locus as a "lot . . . shown on a plan or deed recorded." See *Vetter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630 (where two lots owned together were treated as a single lot in the somewhat comparable circumstances there described). See also *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 353; *Chater* v. *Board of Appeals of Milton, ante,* 237, 241–242, 244, 246. Cf. *Clarke* v. *Board of Appeals of Nahant,* 338 Mass. 473, 477–480 (dealing with an unusual by-law and an ambiguous amendment). Cf. also *Publico* v. *Building Inspector of Quincy,* 336 Mass. 152, 154–155. We need not consider or discuss what the situation would have been if Vassalotti or any predecessor in title at any time since the adoption of the zoning by-law in 1939 had owned any land adjoining the locus.

In this court, Vassalotti has proceeded essentially as if the proceedings before the board had been an appeal from

---

(b) any proposed structure is to be located on such lot so as to conform with the minimum requirements of front, side, and rear yard setbacks, if any, in effect at the time of such recording . . . and to all other requirements for such structure in effect at the time of building . . ." (emphasis supplied). In G. L. c. 41, § 81L (inserted by St. 1953, c. 674, § 7, later amended at various times in respects not relevant), "lot" is defined as "an area of land in one ownership, with definite boundaries, used, or available for use, as the site of one or more buildings."

the denial of a building permit. If under G. L. c. 40A, § 5A, and § 17 of the by-law Vassalotti is entitled to a permit, he is not entitled to a variance (if, indeed, his situation would in all respects meet the requirements for a variance; see *Coolidge* v. *Zoning Bd. of Appeals of Framingham,* 343 Mass. 742, 744–746) since he does not need one. See the *Publico* case, *supra,* at p. 155, and the *Chater* case, *supra,* at pp. 241–243. His application to the board of appeals does not seem to have been treated (either by the board or by the trial judge) as an appeal from the denial of a permit (G. L. c. 40A, § 13; cf. § 15) but rather as a request that the board either grant a variance or declare that the locus may be regarded as a single lot and be mentioned on the town records as a single lot.

We think that Vassalotti was entitled to a building permit, so far as the provisions of § 17 of the zoning by-law and of § 5A are concerned. We now so state to avoid further litigation. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731. The final decree, however, was correct in holding that Vassalotti was not entitled to a variance. That decree is to be modified (a) to provide simply that the board of appeals did not exceed its authority in denying a variance, and (b) that the decree is without prejudice to any subsequent application for a building permit. As so modified, the final decree is affirmed.

*So ordered.*