BERNARD C. LINDSAY & another, trustees, *vs.* BOARD OF APPEALS OF MILTON.

Norfolk.   April 7, 1972. — June 14, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Zoning,* Lot.   *Words,* "Lot."

The 1938 zoning by-law of a town, in defining "lot" as "a single area of land . . . [laid out] by metes [and] bounds . . . in a recorded deed or on a recorded plan" meant the most recent recorded deed or recorded plan, and where a 1967 deed to the plaintiffs in a suit in equity conveyed "[a] certain parcel of land," identified as "being Lots 1 and 2 on a [recorded] plan . . . dated October, 1903," with one metes and bounds description following the perimeter of the combined lots and with one area for both lots, the plaintiffs

acquired a single lot consisting of two former lots, not two separate lots, although the 1903 plan showed separate metes and bounds and separate areas for each lot and mesne recorded conveyances all referred to that plan; and the plaintiffs were not entitled, as to Lot 2 alone, to relief from the acreage and frontage provisions of the by-law accorded a "lot . . . recorded at the time of the adoption of . . . [the] by law." [130–132]

BILL IN EQUITY filed in the Superior Court on August 7, 1967.

The suit was heard by *Bennett, J.*

*Robert D. O'Leary*, Town Counsel, for the defendant.

*Richard C. Driscoll, Jr.*, for the plaintiffs.

TAURO, C.J. The defendant board appeals from a final decree of the Superior Court annulling the board's decision which affirmed the denial of a building permit to the plaintiffs for construction of a single family dwelling and garage upon the locus in Milton. We have before us the evidence in the case and the judge's report of material facts.

The following pertinent facts appear from the record: On April 14, 1967, the plaintiffs acquired the locus as a part of "[a] certain parcel of land" from four members of the Murdock family by a quitclaim deed recorded at the Norfolk County registry of deeds. The deed describes the parcel as "situated on Canton Avenue in Milton . . . being Lots 1 and 2 on a plan . . . dated October, 1903, a copy of which . . . is recorded . . . and bounded and described [by certain metes and bounds and with a single area] [1] according to said plan." The locus is lot 2 as shown on the recorded 1903 plan, and it contains a shed but no other building. There was a dwelling on lot 1.

Lots 1 and 2 as shown on the recorded 1903 plan first came under the same ownership in 1920 when Carrie E. Murdock, the owner of lot 1 since 1910, acquired title to

---

[1] "Northwesterly by Canton Avenue, 153.63 feet; Northeasterly by land now or formerly of Frederick A. Whitwell, 208.71 feet; Southeasterly by land now or formerly of J. Porter Holmes, 144.70 feet; and Southwesterly by a private way leading from Canton Avenue . . . 202.44 feet. Area 30,573 square feet of land, more or less."

lot 2.   The 1910 and 1920 deeds, both duly recorded, re-
spectively described lots 1 and 2 by metes and bounds
according to the 1903 plan.   On April 27, 1945, Mrs.
Murdock transferred title to the two lots to Gladys P.
Leavitt by a single deed which contained separate metes
and bounds descriptions and separate areas for each lot.[2]
On the same day, Leavitt, probably acting as a "straw,"
executed a deed conveying the land back to her transferor
and six other Murdocks.   This second 1945 deed identi-
fied the property, in the manner of the 1967 deed, as be-
ing "[a] certain parcel of land" with one metes and
bounds description and one area.[3]   Both 1945 deeds were
duly recorded.   A 1947 deed, also duly recorded, between
members of the Murdock family, contained the same de-
scription as the second 1945 deed.   The Murdock prop-
erty was assessed as one lot beginning in 1933.

On April 26, 1967, approximately two weeks after ac-
quiring the Murdock property, the plaintiffs applied to
the Milton building commissioner for a permit to con-
struct a single family dwelling and garage on the locus
(lot 2 on the recorded 1903 plan).   The plaintiffs' ap-
plication was denied by letter dated May 1, 1967, on
the ground that the locus did not constitute a buildable

---

[2] The deed provides in pertinent part as follows: "I, Carrie E. Mur-
dock, . . . grant to Gladys P. Leavitt . . . with quitclaim covenants
two certain parcels of land . . . being bounded and described as
follows:

"The *first* of said parcels being shown as Lot 1 on a 'Plan' . . .
dated . . . 1903, a copy of which plan is recorded with Norfolk Deeds
. . . and being bounded and described as follows: Northwesterly: by
Canton Avenue . . . 153.63 feet; Northeasterly: by land formerly of
Frederick A. Whitwell . . . 130.26 feet; Southeasterly: by Lot 2 as
shown on said plan . . . 147.18 feet; and Southwesterly: by a private
way leading from Canton Avenue . . . 125.57 feet.   Containing 19,238
square feet . . . .

"The *second* of said parcels being shown as Lot 2 on said plan, and
being bounded and described as follows: Northwesterly: by Lot 1 as
shown on said plan . . . 147.18 feet; Northeasterly: by land now or
formerly of Frederick S. Whitwell . . . 78.45 feet; Southeasterly: by
land now or formerly of J. Porter Holmes . . . 144.70 feet; and South-
westerly: by a private way leading from Canton Avenue . . . 76.87
feet.   Containing 11,335 square feet."

[3] The description is identical to that in the plaintiffs' deed from the
Murdocks.   See footnote 1, *supra*.   Compare with the description in
the first 1945 deed (footnote 2).

lot under the town's zoning by-law. While an appeal was pending to the defendant board, the plaintiffs on July 7, 1967, deeded the remaining portion of former Murdock property (lot 1 on the recorded 1903 plan) to a third party.[4] Subsequently, on July 20, 1967, the board affirmed the action of the building commissioner. The plaintiffs appealed to the Superior Court. G. L. c. 40A, § 21.

The provisions of the Milton zoning by-law involved in this case are as follows: The definition of "lot" states: "A 'lot' is a single area of land in one ownership . . . [laid out] by metes, bounds or boundary lines in a recorded deed or on a recorded plan. . . . [N]ew lots may be established by recording the same or by filing with the Building Commissioner . . . [a] plan . . . defining the lot by metes and bounds." Section VI, A, 1, governing minimum area and frontage, provides in part: "[N]o dwelling shall be erected or maintained *except on lots as hereinbefore defined, or on lots established* after this by-law is adopted, *as hereinbefore provided,* containing not less than 40,000 square feet and . . . a frontage of not less than 150 feet, and not more than one dwelling shall be erected on each such lot except that . . . (c) one dwelling may be erected on a lot containing less than 40,000 square feet, or having a frontage of less than 150 feet, if such lot was recorded at the time of the adoption of this by-law [January 29, 1938]" (emphasis supplied).[5] See G. L. c. 40A, § 5A, as amended through St. 1961, c. 435, § 1.

Since the locus contains substantially less area (11,335

---

[4] The property conveyed is described in the deed as "a certain parcel of land . . . being shown as Lot #1 on a plan . . . dated . . . 1903 . . . recorded with the Norfolk County Registry of Deeds . . . and bounded and described as follows: Northwesterly by Canton Avenue . . . 153.63 feet; Northeasterly by Lot 3, as shown on said plan, . . . 130.26 feet; Southeasterly by Lot #2, as shown on said plan, . . . 147.18 feet; and Southwesterly by a private way, indicated on said plan as 'Right of way' . . . 125.57 feet. Containing . . . 19,238 square feet of land according to said plan."

[5] Exceptions are also made for lots containing more than 64,000 square feet, which may be subdivided in accordance with the provisions of clauses (a) and (b) of the by-law (not quoted).

square feet) than the minimum area for new lots and has only about half (76.87 feet) the required frontage, a dwelling cannot be erected thereon unless the plaintiffs can avail themselves of the exception applicable to lots in existence in 1938. It is conceded that the locus was a lot separate and distinct from lot 1 in 1938. The issue is whether, for zoning purposes, the plaintiffs, by their deed, acquired separate lots or a single lot consisting of two former lots 1 and 2.

On this question, the board ruled that the execution of the second 1945 deed served to extinguish lots 1 and 2 and to establish a new lot combining the area of the predecessor lots. The trial judge, after de novo review under G. L. c. 40, § 21, reached a different conclusion. He ruled that "the deeds [executed] subsequent to 1938 did not serve to establish a new lot within the meaning of the . . . [zoning by-law]." Upon appeal to this court, the defendant board contends that the judge's ruling was legal error. We agree.

1. We are of opinion that the deed by which the plaintiffs acquired the Murdock property does not entitle them to have it treated as two lots for zoning purposes. "Zoning by-laws must be construed reasonably." *Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 258. In defining "lot" as "a single area of land in one ownership . . . [laid out] by metes [and] bounds . . . in a recorded deed *or* on a recorded plan" (emphasis supplied), we believe that the framers of the zoning by-law meant the *most recent* recorded deed or plan. This interpretation is confirmed by the second sentence of the definition which provides for the creation of new lots through the recording of deeds or through the filing of a plan with the town building commissioner. Compare *Miller* v. *Board of Appeals of Brookline,* 356 Mass. 659, 661. The plaintiffs' recorded deed, and not the recorded 1903 plan, therefore is the proper measure of what they purchased from the Murdocks. Since the deed describes the property conveyed as "[a] certain parcel of land" and sets out a metes and bounds description of a single area, the

effect of the deed was to convey one lot as that term is used in the zoning by-law. See *Vassalotti* v. *Board of Appeals of Sudbury,* 348 Mass. 658, 661 (similar result reached even in the absence of an express definition of "lot"). Cf. *Clarke* v. *Board of Appeals of Nahant,* 338 Mass. 473, 476–477.

It is a well known practice in conveyancing to refer to a recorded plan as a convenient method of showing chain of title. Davis, Massachusetts Conveyancers' Handbook (2d ed.) § 140. The mere fact that the second 1945 deed, the 1947 deed, and the plaintiffs' deed all refer to the 1903 plan, therefore, is insufficient to give rise to a presumption of an intention to preserve the lots designated therein. Furthermore, since the plaintiffs' deed has superseded the second 1945 deed and the 1947 deed for purposes of the "lot" definition, the intention of prior owners in causing those deeds to be executed cannot in any event enure to the benefit of the plaintiffs. In interpreting a deed, we seek, in so far as established rules of construction permit, "to give effect to the intent of the parties as manifested by the words used." *Walker* v. *Sanderson,* 348 Mass. 409, 412, quoting from *Bessey* v. *Ollman,* 242 Mass. 89, 91.

2. Inasmuch as the plaintiffs acquired one lot and not two,[6] it is not open for them, in effect, to revive the old lots 1 and 2 which no longer exist as far as the zoning by-law is concerned. The only sensible construction of the minimum area and frontage requirement is that the exception relative to undersized lots applies to lots which

---

[6] Even apart from the deed descriptions, the assessment practices of the town with respect to the Murdock property since 1933 are some indication of the status of the property when acquired by the plaintiffs in April, 1967. As noted, *supra,* the town assessed the property as one lot since 1933. We said in *Alley* v. *Building Inspector of Danvers,* 354 Mass. 6, 8, that, where owners have benefited from a particular assessment practice, "[i]t is not unjust" to require that an existing use be maintained even though, under a different interpretation of the zoning by-law, a more favorable use might be open to the owners. In the instant case, it may well be that assessment of the property as one lot has been to the benefit of the owners since the property, if treated as one lot with a house and one buildable lot, would probably have been assessed at a higher amount than it in fact was.

not only were in existence in 1938 but also have retained a separate identity. See *Vetter* v. *Zoning Board of Appeal of Attleboro,* 330 Mass. 628, 630. Cf. *Vassalotti* v. *Board of Appeals of Sudbury,* 348 Mass. 658, 661; *Smigliani* v. *Board of Appeals of Saugus,* 348 Mass. 794; *Gaudet* v. *Building Inspector of Dracut,* 358 Mass. 807.

3. The final decree is reversed. A decree is to be entered sustaining the decision of the board of appeals.

*So ordered.*