LINDSEY R. PERRY, trustee, vs. BUILDING INSPECTOR
OF NANTUCKET & others.
(and two companion cases).

Nantucket.   May 11, 1976. — July 20, 1976.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Zoning*, Lot, Size of lots, Building permit, Amendment of by-law or
ordinance.   *Subdivision Control.   Nantucket.*

Where the plaintiff's subdivision plan had been endorsed by a planning
board as not requiring approval under the Subdivision Control Law
before the town adopted a zoning by-law which limited use of the
land to single family detached dwellings and established dimensional
and intensity regulations, the protection afforded by G. L. c. 40A,
§ 7A, went only so far as to permit use of the land for "condominium
developments" but did not protect the developments from the dimen-
sional and intensity regulations of the by-law [471-473]; nor did the
provisions of G. L. c. 40A, § 5A, protect the developments from the
area and frontage requirements of the by-law [473-475].

THREE CIVIL ACTIONS commenced in the Superior Court
on November 22, 1974, November 26, 1974, and December
9, 1974, respectively.

The cases were heard by *Vallely*, J., on a statement of
agreed facts.

*Donald L. Connors* (*Susan G. Kupfer* with him) for the
defendants.

*Theodore L. Tillotson* for the plaintiff.

ARMSTRONG, J.   The plaintiff is the owner of two par-
cels of land[1] situated on the easterly side of Cambridge

---

[1] The statement of agreed facts refers to "parcel" in the singular, but
the attached plans, incorporated by reference and stipulated to be ac-
curate, show that lots 483-488 and 612 (referred to in the aggregate by
the parties as "lot 1") are not contiguous with the remaining lots in-
volved in the case, being separated from them by lot 557. The statement

Street in the Madaket section of Nantucket, on which he is attempting to build four condominium developments. In the spring and summer of 1974 the building inspector issued the necessary building permits. After hearings called to air the complaints of various residents, the board of appeals revoked the permits for three of the four developments in two decisions rendered in November, 1974. Two of the cases are appeals by the plaintiff under G. L. c. 40A, §21,[2] from those decisions. The third is an action for declaratory relief, brought by the plaintiff against the building inspector in the belief that the latter intended to revoke the permits for the fourth development. The three cases were heard together in the Superior Court on a stipulation of facts amounting to a case stated, and judgments were entered favorable to the plaintiff in each case. The appeals to this court were taken by the complaining residents;[3] neither the board of appeals nor the building inspector has appealed.

The plaintiff's parcels of land are shown on a plan which was endorsed by the planning board, "approval under the Subdivision Control Law not required," on December 22, 1971.[4] See G. L. c. 41, § 81P. Most of the lots shown on the parcels are of the "pork chop" variety, connected to Cambridge Street by long, narrow strips of land twenty feet in width. At that time Nantucket did not have a

of agreed facts does not disclose who owns lot 557; for purposes of decision we must assume that it is not owned by the plaintiff, as the land he owns is described by reference to particular lot numbers, and 557 is not one of those mentioned.

[2] All references in this decision to sections of G. L. c. 40A, refer to such sections as in effect prior to St. 1975, c. 808, § 3.

[3] The complaining residents intervened as parties defendant in the action for declaratory relief against the building inspector; they were parties from the outset in the other cases.

[4] One of the lots in the plaintiff's parcels, lot 612, was not included in the submission to the planning board in 1971; on March 18, 1974, it received the endorsement "approval under the Subdivision Control Law not required." The parties in this court frame their arguments on the basis that all of the lots in the two parcels are to be treated as having been shown on the plan endorsed in 1971, and accordingly we decide the cases on that footing.

zoning by-law; and the plaintiff's position throughout this litigation has been that, because his plan received the endorsement of the planning board before a zoning by-law took effect, he is entitled to the protections afforded by G. L. c. 40A, §§ 5A and 7A, against the application of pertinent provisions of the present zoning by-law to his proposed condominium developments.

The zoning by-law was adopted in May, 1972, and as amended through 1974, when the building permits in question were issued, classified the plaintiff's parcels in the "residential 2" zone.[5] The only private use permitted in that zone as of right is single family detached dwellings together with accessory buildings (subject to certain yard requirements), one of which may contain another dwelling unit. The applicable density or intensity regulations require lots to have 20,000 square feet of area,[6] 75 feet of frontage, 20 feet of front yard, a maximum 20 per cent "ground coverage ratio," and a maximum 40 per cent "floor area ratio."

In addition to single family detached dwellings, permitted as of right, it may be (the point is not argued[7])

---

[5] The 1974 amendments are applicable to all of the building permits issued, whether before or after their effective date (August 23, 1974), because the notice of the planning board's hearing on those amendments was first published on February 7, 1974, before any of the building permits in controversy was issued to the plaintiff. See G. L. c. 40A, § 11; *Smith* v. *Board of Appeals of Brookline,* 366 Mass. 197, 199-200, 202 (1974).

[6] The area requirement is subject to the following exception: that "any lot shown on a plan endorsed with the words 'approval under the subdivision control law not required' . . . before the effective date of this By-law, may be built upon although the lot contains less than the required minimum lot area provided such lot was held in ownership separate from that of adjoining land located in the same district and provided that the building(s) to be built shall not cover more than the greater of . . . 1,200 square feet of lot area, or . . . [20% of the lot area]." The plaintiff does not rely on this exception. Compare *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348 (1963), *Chater* v. *Board of Appeals of Milton,* 348 Mass. 237, 244 (1964), and *Giovannucci* v. *Board of Appeals of Plainville, ante,* 239, 242-243 (1976).

[7] Cluster developments are permitted specially in the "Limited Uses General district," and the permitted uses in the residential 2 district include "[a]ll uses permitted in Limited Uses General district."

that cluster developments are permissible by special exception in the residential 2 zone. Such developments require, among other things, that the tract be not less than 10 acres, that the number of lots not exceed the number of lots upon which dwellings could otherwise be constructed on the tract, that there be no more than 8 dwelling units per acre, and that lots contain 10,000 square feet and have (subject to an exception not material) 50 feet of frontage on a public or private way, a minimum front yard of 15 feet, and a minimum width at the building of 50 feet. A further requirement is that at least 65 percent of the tract be open land, and that the area of open land, when added to the areas of all lots smaller than those permitted as of right in the zone, be not less than the number of such lots multiplied by the minimum number of square feet required in the zone for a buildable lot. It is thus apparent that the area requirements for dwellings in cluster developments cannot be less than, and may exceed, those applicable to single family dwellings in the same zone.

The plaintiff's first development, which has in fact been built under the still outstanding building permit, occupies the smaller of the two parcels.[8] It contains seven one-and-a-half story, single-family detached dwellings. The parcel contains 107,337 square feet and has 358 feet of frontage on Cambridge Street. The second development is planned to have eight such dwellings, occupying a portion[9] of the larger parcel containing 138,148 square feet and 100 feet of frontage. The third development would have nine dwellings on another portion[10] containing 186,541 square feet and 120 feet of frontage. The fourth would have eight dwellings on the remaining portion[11] containing 150,773

---

[8] Lots 483-488 and 612 (referred to by the parties as "Lot 1").

[9] Lots 492-496 and 560 ("Lot 2"). Lot 560 has no frontage; it seems, therefore, that the 1971 plan, on which it was included, must have shown a subdivision. The point is not raised in the arguments. Compare Cassani v. Planning Bd. of Hull, 1 Mass. App. Ct. 451 (1973).

[10] Lots 497-502.

[11] Lots 503-508.

square feet and 223 feet of frontage. Although all of the developments fall well within the front yard, ground coverage ratio, and floor area ratio requirements of the zoning by-law, it is clear that none is in compliance with both the area requirement and the frontage requirement of either the single family detached dwelling intensity regulation[12] or the cluster development intensity regulation.

We turn to the plaintiff's contention that the second paragraph of G. L. c. 40A, § 7A,[13] affords his land protection against the application of those provisions of the zoning by-law. In *Bellows Farms, Inc.* v. *Building Inspector of Acton*, 364 Mass. 253, 260 (1973), the protection afforded by the second paragraph of § 7A to "the use of the land" shown on a plan endorsed "approval not required" was held to mean "protection only against the elimination of or reduction in the kinds of uses which were permitted when the plan was submitted to the planning board." The second paragraph was held not to include protection against the application of dimensional and density requirements to land shown in the plan, at least where such requirements "[do] not constitute or otherwise amount to a total or virtual prohibition of the use of the locus for" a purpose permitted at the time of submission of the plan.

---

[12] We do not accept the plaintiff's contention that, in effect, we should treat the area requirement of the by-law as 10,000 square feet per single-family dwelling unit, in view of the fact that two dwelling units are permissible on a lot of 20,000 square feet. The by-law does not contemplate two independent single family dwellings on a lot. The second dwelling unit must be contained in an accessory building, which is defined as "a structure devoted exclusively to a use accessory to a principal use of the lot." An "accessory use" is "a use customarily incident to, and on the same lot as, a principal use." The plaintiff's proposed single-family, detached dwellings are clearly principal uses, not accessory to some other principal use.

[13] The second paragraph of G. L. c. 40A, § 7A, as appearing in St. 1965, c. 65, reads in part: "When a plan referred to in section eighty-one P of chapter forty-one has been submitted to a planning board ... the use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan ... and for a period of three years from the date of endorsement by the planning board that approval under the subdivision control law is not required, or words of similar import ...."

*Ibid.* Contrast *Rayco Investment Corp.* v. *Selectmen of Raynham,* 368 Mass. 385, 389-390 (1975). It follows that, in the present cases, the protection afforded by § 7A to the plaintiff's parcels goes only so far as to permit his use of the land for a "condominium development" (which the plaintiff contends is a multi-family use) in the face of the 1974 zoning by-law restricting the zone in which the plaintiff's parcels lie to single-family use. Section 7A does not protect those developments from the dimensional and intensity requirements of the 1974 by-law.

The plaintiff attempts to distinguish the *Bellows Farms* case on the ground that the increased intensity requirements held applicable in that case expressly applied to apartment houses in a zone where apartments were a permitted use. By contrast, he argues, the defendants are seeking to have us apply intensity requirements intended for single-family, detached dwellings to a multi-family use. The plaintiff's contention is that, under the protection of § 7A, he may devote his land to a multi-family use, and that the zoning by-law prescribes no intensity requirements whatever for such a use.

This argument, if accepted, would result in the anomaly that the protection afforded by § 7A to a use forbidden in a zone would be broader than the protection it affords to a use permitted in the zone. The latter would be subject to intensity regulation, but the former would not. We hold, instead, that in applying the principle of the *Bellows Farms* case to a use permitted in a zone solely through the protection of the second paragraph of § 7A, a reasonable accommodation must be made, applying either the intensity regulations applicable to a related use within the zone or, alternatively, applying the intensity regulations which would apply to the protected use in a zone where that use is permitted. No hard and fast rule can be laid down. The reasonableness of the accommodation will depend on the facts of each case. "Zoning by-laws must be construed reasonably." *Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 258 (1970). *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. 126, 130 (1972).

The cases before us present no difficulty in this respect. In particular, we need not decide whether the applicable intensity requirements are those applicable to single-family dwellings (as the plaintiff is in fact constructing single-family dwellings) or those applicable to cluster developments (as the plaintiff apparently envisions common ownership of the open land). It would be especially inadvisable to attempt to do so in view of the paucity of the record in this respect. The crucial fact is that none of the developments meet both the area and frontage requirements for either use. Section 7A does not protect the plaintiff's parcels from the applicability of the intensity requirements of the zoning by-law, as amended through 1974.

The plaintiff contends, however, that the first paragraph of G. L. c. 40A, § 5A[14], protects his developments from the area and frontage requirements of the zoning by-law. Alternatively, he contends that, because the four land areas (comprised in each case of six or more contiguous lots shown on the 1971 plan) each exceed the minimum specifications for a buildable lot under the Nan-

---

[14] "... [A]ny lot shown on a plan endorsed with the words 'approval under the subdivision control law not required' ... which complies at the time of ... such endorsement ... with the minimum area, frontage, width and depth requirements, if any, of any zoning ... by-law in effect in the ... town where the land is situated, notwithstanding the adoption ... of a zoning ... by-law in such ... town imposing minimum area, frontage, width, depth, or yard requirements ... (1) may thereafter be built upon for residential use if, at the time of the adoption of such requirements ... , such lot was held in ownership separate from that of adjoining land located in the same residential district, or (2) may be built upon for residential use for a period of five years from the date of such ... endorsement ... if, at the time of the adoption of such requirements ... , such lot was held in common ownership with that of adjoining land located in the same residential district; and further provided, in either instance, at the time of building (*a*) such lot has an area of five thousand square feet or more and a frontage of fifty feet or more, is in a district zoned for residential use, and conforms except as to area, frontage, width, and depth with the applicable provisions of the zoning ... by-law in effect in such ... town and (*b*) any proposed structure is to be located on such lot so as to conform with the minimum [yard] requirements ... in effect at the time of ... such endorsement ... and to all other requirements for such structure in effect at the time of building."

tucket zoning by-law, he does not need the protection afforded by § 5A.

Section 5A, by its terms, affords its protection to *lots* shown on a plan (in contrast to § 7A, which affords protection to the *land* shown on a plan). In order to qualify for protection under § 5A, a lot must have at least 5,000 square feet of area and 50 feet of frontage. The only lots shown on the 1971 plan which comply with the minimum frontage requirement needed to obtain § 5A protection are lots 508 and 612. Upon neither of those lots do the plaintiff's development plans call for the construction of a dwelling, and none of the building permits which were issued authorized or involved construction on either of those lots.

The plaintiff contends, however, that under the principle applied in *Vassalotti* v. *Board of Appeals of Sudbury*, 348 Mass. 658 (1965), and *Gaudet* v. *Building Inspector of Dracut*, 358 Mass. 807 (1970), he is entitled to combine lots shown on a plan, each of which is too small to qualify by itself for protection under §5A, into larger lots which may qualify for that protection. The circumstances in those cases, however, were quite different from those in the cases before us. In the *Vassalotti* case the predecessor in title of the person seeking the protection of § 5A had, before the zoning by-law took effect, purchased a parcel of land consisting of several lots shown on a plan, none of which had the requisite area and frontage to qualify under § 5A, but the whole parcel did meet the dimensional requirements of § 5A. Neither the plaintiff nor his predecessor in title owned any adjacent land, either at the time the zoning by-law took effect or thereafter. Under those circumstances the plaintiff's entire parcel, as shown in the deed, was held to be a single "lot" within the meaning of § 5A. The *Gaudet* case, although the record before the court was said to have been "limited" and the decision was somewhat cryptic, appears to have turned on similar principles.

The circumstances in the cases before us are quite different. The present plaintiff, by applying his adjacent

land, could meet the dimensional requirements of the zoning by-law for buildable lots. We do not think that § 5A permits him to stop short of that point. Section 5A must be read to apply to the lots shown on the plan, or to all the plaintiff's adjacent land shown on the plan, but not to anything in between. Section 5A does not give a developer the privilege of meeting the dimensional requirements of § 5A by assembling new nonconforming lots when he has it within his power to assemble conforming lots. Compare *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 352-353 (1963); *Chater* v. *Board of Appeals of Milton,* 348 Mass. 237, 244 (1964); *Smigliani* v. *Board of Appeals of Saugus,* 348 Mass. 794 (1965); *Giovannucci* v. *Board of Appeals of Plainville, ante,* 239, 242-243 (1976). See also *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. 126 (1972), and *Raia* v. *Board of Appeals of No. Reading, ante,* 318, 321-322 (1976).

The plaintiff has, in fact, assembled contiguous lots into larger lots, four in number, each devoted or intended to be devoted to a condominium development. These larger lots are buildable lots for single family detached dwellings. It does not follow, however, that the plaintiff may construct on each of those lots more dwellings than are permitted by the intensity requirements of the zoning by-law. The purpose of § 5A is to permit a "lot" which meets the dimensional requirements of that section to be built upon notwithstanding the fact that it fails to meet the dimensional requirements of the zoning by-law. It is not meant to permit a lot which conforms to the dimensional requirements of the zoning by-law to be built upon more intensively than the zoning by-law contemplates. Compare *Vetter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630-631 (1953).

It follows that the zoning by-law is applicable to the four developments and that the building permits which were issued exceeded in number those which could have been issued in conformity with that by-law. We have no way of deciding on this record which of the permits are to be considered as having been lawfully issued and which

are to be considered as excess, nor have the parties gone into those questions. The cases are therefore remanded to the Superior Court for further proceedings consistent with this opinion. In the exercise of that court's discretion, the two cases arising under G. L. c. 40A, § 21, may be remanded to the board for further consideration.

*Judgments reversed.*