JANET R. HEALD & others[1] *vs.* ZONING BOARD OF
APPEALS OF GREENFIELD; JOAN MERRIGAN & others,
interveners.

Suffolk.    February 12, 1979. — March 23, 1979.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Zoning*, Lot. *Words*, "Lot."

Under a zoning by-law defining "lot" as "a piece or parcel of land
occupied or to be occupied by one main building and its accessory
buildings," contiguous parcels held in common ownership constitu-
ted a lot even though the parcels were described separately for
conveyancing purposes. [289-292]

CIVIL ACTION commenced in the Superior Court on
December 6, 1976.

The case was heard by *Greaney, J.*

*Thomas Lesser (William C. Newman* with him) for Joan
Merrigan & others.

*J. Nicholas Filler (Herbert H. Hodos & Paul A. Trudel*
with him) for the plaintiffs.

KASS, J. The plaintiffs appealed to the Superior Court
under G. L. c. 40A, § 17 (inserted by St. 1975, c. 808, § 3),
from an adverse interpretation by the board of appeals of
Greenfield of that town's zoning by-law. The parties' dis-
pute revolves around whether, for purposes of application
of the zoning by-law, the word "lot" should mean a lot as
described in a deed, record plan, or other source of title,
or should mean contiguous lots held in common owner-
ship. We agree with the Superior Court judge that the
latter interpretation is correct.

---

[1] Lois E. Grant, Bessie F. Kingsley, and Martha S. Kingsley.

Anciently, lots easterly of Federal Street (then called Bernardston Road) in Greenfield were arranged in the classic Nineteenth Century grid mode on a plan recorded December 23, 1890. See figure A of the accompanying sketch plan. By 1950, the boundaries of the land which the plaintiffs now own had been altered so that their land appeared as parcels 1, 2, 3, and 4 in figure B of the sketch. All parties agree that parcels 2 and 4 may be used for commercial purposes. The defendants and the interveners dispute that parcel 3 (cross-hatched) may be so used, even if used in conjunction with parcel 2 (or parcels 2 and 4). What we decide as to parcel 3 governs parcel 1 (diagonal lines). The plaintiffs had applied for a building permit to build a fast food restaurant on parcels 2, 3, and 4. The building inspector refused a permit, the board upheld his refusal, and the Superior Court judge annulled the decision of the board, in effect requiring the issuance of a building permit. From this judgment of the Superior Court the interveners have appealed.

Greenfield first adopted a zoning by-law in 1957. At that time parcels 1, 2, and 3 were held in common ownership, although the deed into the common owners, James and Grace Roberts, described the land conveyed by references to three separate prior deed descriptions. As first enacted, the by-law defined "lot" as "a piece or parcel of land occupied or to be occupied by one main building and its accessory buildings." The zoning map which accompanied this by-law established a commercial district along Federal Street "for depth of lot but not greater than 400 feet." In his memorandum of decision and order for judgment (we refer to a substituted memorandum and order filed July 11, 1977), the trial judge found that there was commercial use along Federal Street within one half mile in either direction from the locus. At its 1965 annual town meeting, Greenfield adopted various amendments to its zoning by-law, including a revised definition of "lot" which read:

Heald *v.* Zoning Board of Appeals of Greenfield.

FIGURE A

Portion of
Plan Recorded
(not to scale)

FIGURE B

"A continuous parcel of land meeting the lot requirement of the By-Law for the district in which the land is situated, and if occupied by a building or buildings, meeting the minimum yard requirements of that district and having the required frontage on a street or on such other means of access as may be determined in accordance with the provisions of the law to be adequate as a condition of the issuance of a building permit."

Because the trial judge in his memorandum of decision and order for judgment concluded that lots in back of lots fronting on Federal Street could not be used for commercial purposes under the 1957 definition of "lot," but that the 1965 amendment did allow back lots joined in common ownership with front lots to be used for commercial purposes, the interveners have labored strenuously in motions below and in their briefs on appeal to establish that the 1965 definition worked no material change in the 1957 definition. All parties agree that we must apply the 1965 by-law and that the only significance of the 1957 by-law is that, coupled with legislative history and the history of layouts of parcels on the locus, the 1957 by-law might serve as a guide to interpreting the applicable provision.

We are of the opinion that, under the 1957 definition of "lot," a common owner of contiguous parcels which were described separately for conveyancing purposes could treat them as one lot for zoning purposes. Such an assembled lot could be the site for one main commercial building. A fortiori, a common owner could treat parcels with separate sources of title as one lot under the 1965 definition.

Even before the advent of zoning laws, our courts have held that. where contiguous parcels were conveyed as separate parcels, or designated as such on recorded plans, the whole tract constituted one "lot" of land for purposes of determining to what a mechanic's lien might attach. *Batchelder* v. *Rand,* 117 Mass. 176, 178 (1875). *Orr* v. *Fuller,* 172 Mass. 597, 600 (1899). In the absence of speci-

fic zoning code provisions defining a "lot" in terms of sources of title or assessors' plans, the Supreme Judicial Court has consistently held that adjoining parcels may and, indeed, in certain instances, must be considered one lot for zoning purposes. *Vetter* v. *Zoning Board of Appeal of Attleboro*, 330 Mass. 628, 630 (1953). *Vassalotti* v. *Board of Appeals of Sudbury*, 348 Mass. 658, 661 (1965). *Gaudet* v. *Building Inspector of Dracut*, 358 Mass. 807, 808 (1970). Still more recently, we have had occasion to say that "[t]he usual construction of the word 'lot' in a zoning context ignores the manner in which the components of a total given area have been assembled and concentrates instead on the question whether the sum of the components meets the requirements of the by-law." *Becket* v. *Building Inspector of Marblehead*, 6 Mass. App. Ct. 96, 104 (1978). Changing patterns of land use frequently require land assembly and realignment of historic lot lines. Garden apartments, office and industrial parks, supermarkets, and shopping centers are among examples of contemporary uses of land which are likely to involve land assembly. It would be a peculiarly restrictive zoning code which tied owners to descriptions of record. Nor does the rule cut only in favor of assembly. By its application, owners of adjoining record lots have been prevented from artificially dividing them so as to restore old record boundaries for the sake of availing themselves of the grandfather provisions of G. L. c. 40A, § 6 (inserted by St. 1975, c. 808, § 3, and appearing as § 5A of the previous zoning enabling act). *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. 126, 130-131 (1972). It is implicit in the provision of the Greenfield zoning by-law, which provides for potential commercial development on both sides of Federal Street to a depth of 400 feet, that some land assembly must have been contemplated.

*Clarke* v. *Board of Appeals of Nahant*, 338 Mass. 473 (1959), upon which the defendants rely heavily, does not point to a different conclusion. There is no suggestion in *Clarke* that owners are chained to record descriptions

and, as the court observed in *Vassalotti* v. *Board of Appeals of Sudbury, supra* at 661, the *Clarke* case dealt "with an unusual by-law and an ambiguous amendment." Nor is it significant that, after the three parcels came into common ownership, the owners of them continued to carry forward old record descriptions. Conveyances frequently show a chain of title by reference to existing descriptions and plans. *Lindsay* v. *Board of Appeals of Milton, supra* at 131.

The defendants argue that such an interpretation of the Greenfield zoning by-law runs the risk of "pork chop" lots off Federal Street, such as parcel 1 on figure B of the sketch above, thus permitting the intrusion of commercial use into an otherwise residential area. As it stood in 1977, and if not amended since, the Greenfield zoning by-law may, indeed, permit this,[2] but the municipality has the simple remedy of amending its zoning regulation to require frontage on Federal Street sufficient to prevent gerrymandered lots.

Because of our view that the text of the 1957 by-law was no more restrictive on the issue of assembly of parcels than the applicable by-law, i.e. that which was enacted in 1965, we need not consider legislative history surrounding adoption of the 1965 amendment tending to show that the town meeting did not intend to effect a change from the 1957 by-law in the ability of an owner to assemble lots.

The defendants have also argued that since, at all times material, parcels 1, 2, and 3 were separately assessed, and at values suggesting residential use, this assessment history determines their status for zoning purposes. At best, assessment practices serve only as "some indication of the status of the property." See fn. 6 in *Lindsay* v. *Board of Appeals of Milton, supra* at 131. Nothing in G. L. c. 40A

---

[2] The by-laws, however, may not be read as permitting the creation of lots that are practically inaccessible. *Gifford* v. *Planning Board of Nantucket,* 376 Mass. 801, 808-809, 810 (1978).

substitutes the board of assessors for the zoning adminis-
trator or board of appeals of a municipality as the ad-
ministrator of its zoning code.

*Judgment affirmed.*