GARY A. GIRARD & others[1] vs. BOARD OF APPEALS OF EASTON & others.[2]

Bristol.  May 26, 1982. — August 23, 1982.

Present: HALE, C.J., PERRETTA, & KASS, JJ.

Zoning, Lot; Variance; Constructive grant of variance; Board of appeals: decision.

For the purpose of determining "grandfather" rights with respect to a parcel of land under the zoning by-law of the town of Easton, it was appropriate to refer to the time of recording of the deed by which an owner conveyed the parcel and an adjoining parcel to himself and his wife as tenants by the entirety. [335-336]

A parcel of land held in common ownership with an adjoining parcel acquired no exemption from dimensional requirements by virtue of G. L. c. 40A, § 6. [336-337]

An action for judicial review of a zoning variance deemed granted under G. L. c. 40A, § 15, by reason of inaction by a town's zoning board of appeals was properly commenced even though no copy of a decision granting the variance had been filed with the town clerk. [337]

This court ordered the annulment of a zoning variance which had been deemed granted under G. L. c. 40A, § 15, as the result of inaction by a town's zoning board of appeals, where facts were not shown to exist which would have enabled the board to grant the variance. [337-338]

CIVIL ACTION commenced in the Superior Court Department on December 21, 1979.

The case was tried before Hurd, J.

Joseph Graglia for Gary A. Girard & others.

Martyn H. Lincoln, Town Counsel, for Board of Appeals of Easton.

---

[1] Anita F. Girard, Herbert V. Anderson, Doris M. Anderson, Anthony P. Cardoza, Rita B. Cardoza, and Gunhild J. Rosene, all abutters of the locus.

[2] Alfred F. Gomes and Martha M. Gomes.

*William T. Condon* for Martha M. Gomes & another, submitted a brief.

Kass, J. Alfred F. Gomes and Martha M. Gomes are the owners of two adjoining parcels in Easton containing 8,769 square feet and 10,500 square feet, respectively. A dwelling house is located on the smaller parcel, and the larger parcel is vacant. In the aggregate, let alone separately, the parcels are below the minimum lot size (40,000 square feet) under the applicable provision of the zoning by-law of Easton. The Gomeses desire to use the vacant parcel as a building lot, claiming grandfather rights under the Easton zoning by-law and G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3. They also applied for, and received by operation of law (G. L. c. 40A, § 15), a variance to build a single-family dwelling on the 10,500 square foot lot.

A judge of the Superior Court ruled that the vacant lot could be treated as a separate lot for purposes of the grandfather provisions, that a variance might have been granted if there had been timely action by the board, and that the grant of the variance by operation of law was "confirmed." We reverse.

1. *The status of the vacant parcel.* Adjoining parcels held in common ownership are generally considered one lot for zoning purposes. *Heald* v. *Zoning Bd. of Appeals of Greenfield*, 7 Mass. App. Ct. 286, 290 (1979). The "usual construction of the word 'lot' in a zoning context ignores the manner in which the components of a total given area have been assembled and concentrates instead on the question whether the sum of the components meets the requirements of the by-law." *Becket* v. *Building Inspector of Marblehead*, 6 Mass. App. Ct. 96, 104 (1978).

Alfred Gomes acquired both parcels on February 4, 1970, and conveyed them to himself and his wife as tenants by the entirety by a deed dated August 28, 1973. That deed described the land as consisting of two parcels. The smaller parcel was described with some precision. The larger, vacant parcel was described as: "The land is adjoining the first parcel and is bounded easterly by Seaver Street, south-

erly by Reynolds Street, westerly by land now or formerly of Simon Anderson and northerly by land now or formerly of Frank Pierson."

At the date of the 1973 deed the zoning by-law (a comprehensive revision having become effective as of March 27, 1973) defined "lot" as: "A single or continuous tract of land held in the same ownership throughout and defined by bounds or lot lines ascertainable by recorded deed or plan." We do not read this definition as one which specifically defines lots in terms of sources of title. Compare *Vetter* v. *Zoning Bd. of Appeal of Attleboro*, 330 Mass. 628, 630 (1953); *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. 126, 130-131 (1972).

When on August 30, 1973, the deed to the Gomeses was recorded, the zoning by-law of Easton, in § 6-3, specified a minimum lot size of 40,000 square feet and a minimum frontage of 150 feet. The grandfather provision in the by-law, § 4-7, spoke in terms of conformity "to the area, width and yard space or building coverage provisions in effect at the time of recording the deed to such lot or lots." For purposes of judging entitlement to grandfather rights it is appropriate to refer to the deed by which the person claiming those rights took title, unless the language of the by-law unambiguously provides for an earlier reference point. See *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. at 131. The Easton by-law provision, § 4-7, did not refer to the first deed in which the description for the vacant lot was used (a deed, incidentally, recorded in 1904). Neither of the Gomeses' parcels, on that analysis, was in conformity with the dimensional requirements of the zoning by-law "in effect at the time of recording the deed to such lot or lots."

2. *Rights under G. L. c. 40A, § 6.* No grandfather rights accrued under G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3. The first sentence of the fourth paragraph of § 6 grants to lots to be used for single- and two-family houses an exemption from dimensional requirements in certain circumstances if "at the time of recording" the lot "was not held in common ownership with any adjoining land." The vacant parcel here in issue has since 1904 been held in com-

mon ownership with the adjoining parcel and, therefore, does not qualify for the exemption. Another, more limited, exemption was added to the fourth paragraph of § 6 by St. 1979, c. 106. It applies only if a plan of the lot in question has been recorded, and as no plan of the lot in issue in this case has been recorded, rights, if any, under § 6 are unavailable.

3. *The variance.* As an alternative to their grandfather rights, the Gomeses, on September 17, 1979, petitioned for a variance. The board held a hearing on October 25, 1979, but failed to issue a decision within seventy-five days after the filing of that petition.[3] Pursuant to G. L. c. 40A, § 15, within seventy-five days after the application for relief is filed, a board is required to render a decision on pain that the relief will be deemed to be granted. See *Noe* v. *Board of Appeals of Hingham*, 13 Mass. App. Ct. 103, 104-107 (1982). Recognizing that the board had constructively granted a variance to the Gomeses, the plaintiffs brought an action on December 21, 1979, under G. L. c. 40A, § 17, as amended by St. 1978, c. 478, § 32. On the date the plaintiffs' action was filed no copy of a decision had been filed with the town clerk. In *Noe* v. *Board of Appeals of Hingham, supra* at 110, we left open how and when review can be had in a case in which a board does not take action[4] or, if it does, fails to file its decision with the city or town clerk.

Now faced with that question, we have no difficulty concluding that a party may seasonably file a complaint seeking judicial review of a constructively granted variance or special permit[5] before a copy of the decision has been filed with

---

[3] The seventy-fifth day fell on December 1, 1979, but that was a Saturday, so that the effective deadline became December 3, 1979.

[4] Eventually the board did act. The record discloses a decision favorable to the Gomeses dated December 10, 1979, but it appears that the decision was not signed by all the members of the board on that date, and, in any event, when counsel for the plaintiffs inquired with the town clerk on December 19, 1979, about the status of the case, no decision had yet been filed.

[5] As to the time within which action must be taken on applications for special permits, see G. L. c. 40A, § 9, seventh par., as amended through

the city or town clerk. This is because when statutes fix a certain time after a procedural event for taking action, the action may be taken before the event. *Tanzilli* v. *Casassa*, 324 Mass. 113, 115 (1949), and cases cited. *McDermott* v. *Jamula*, 338 Mass. 236, 241 (1958), cert. denied, 359 U.S. 968 (1959). Early action when the underlying facts giving ground to the action are known works no prejudice to the adverse party and is different from premature action, where the basis of a cause of action is still uncertain. "[I]t is a general policy of the law to prevent loss of valuable rights . . . because [something] was done too soon." *Becton, Dickinson & Co.* v. *State Tax Commn.*, 374 Mass. 230, 234 (1978).

Zoning relief granted constructively is not beyond judicial review. The relief so granted may be tested on appeal under G. L. c. 40A, § 17, to determine whether facts exist which would have enabled the board to grant the relief. Were it otherwise a board of appeals could, through nonaction, put flagrantly unlawful zoning relief beyond review.

In the record before us there is scant evidence to support a finding that there are circumstances relating to the "soil conditions, shape, or topography of [the] land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located." G. L. c. 40A, § 10, as amended through St. 1977, c. 829, § 4B. Nor are there any findings by the judge to that effect. In the absence of that fundamental ground for a variance, it is not necessary to inquire further. *Lewicki* v. *Board of Appeals of Haverhill*, 8 Mass. App. Ct. 906, 906-907 (1979). The judgment is reversed. As to the variance, a new judgment is to enter that the variance granted by operation of law was without factual support and, had it been granted by a timely decision, would have been beyond the authority of the board; accordingly, the variance is annulled.

*So ordered.*

St. 1977, c. 829, § 3F, and *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 111 (1981). See also G. L. c. 40A, § 15, as appearing in St. 1975, c. 808, § 3.