WAYNE J. SELTZER & others[1] *vs.* BOARD OF APPEALS
OF ORLEANS & another.[2]

Barnstable.    May 18, 1987. — July 22, 1987.

Present: ARMSTRONG, BROWN, & FINE, JJ.

*Zoning, Lot.*

A 1971 provision in a town's zoning by-law which protected the separate
  identities of adjacent lots held in common ownership so as to insulate
  them from future increases in the minimum lot size required for building
  and which had a further provision allowing the owner to change the
  shape, but not the total number, of such lots by redrawing the lot lines,
  permitted an owner of two such contiguous lots, purchased in 1958 and
  1960, to redraw the boundaries of the lots in 1984 in conformance with
  by-law requirements, notwithstanding that a house had been built in
  1962 straddling the old lot boundary and that the two parcels had been
  assessed as one lot from 1979 on, where there was evidence that the
  owner intended at all times there be two lots. [523-524]

CIVIL ACTION commenced in the Superior Court Department
on May 21, 1985.

The case was heard by *James J. Nixon, J.*

*Richard C. Anderson* for Wayne J. Seltzer.

*William F. Riley* for Bertram M. Kantor & another.

*Lawrence O. Spaulding, Jr.,* for Anna F. Greer.

*Michael D. Ford,* Town Counsel, for Board of Appeals of
Orleans.

ARMSTRONG, J. The Orleans zoning by-law contains provi-
sions that insulate adjoining, buildable lots in common owner-
ship from increases that have taken place over the years in the
land area required to qualify for a building permit. The appli-
cable provision in this case, § 4:3-1-2, provides:

"One single-family dwelling may be erected on any lot,
regardless of a common ownership with that of adjoining

[1] Bertram M. Kantor and Martha Kantor.

[2] Anna F. Greer.

land located in the same residential district which, at the time this amendment was adopted, March 9, 1971,[3] contained at least fifteen thousand (15,000) square feet, and had a minimum frontage of one hundred feet (100') . . . and the proposed structure is to be located on such lot so as to conform with the minimum requirements for such structures in effect at the time of building."

Provisions of this type are obviously intended to avoid the application of the general principle that adjacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities with the dimensional requirements of the zoning by-law or ordinance. See *Vetter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630-631 (1953); *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 353 (1963); *Vassalotti* v. *Board of Appeals of Sudbury,* 348 Mass. 658, 661 (1965); *Smigliani* v. *Board of Appeals of Saugus,* 348 Mass. 794 (1965); *Gaudet* v. *Building Inspector of Dracut,* 358 Mass. 807, 808 (1970); *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. 126, 131-132 (1972); *Giovannucci* v. *Board of Appeals of Plainville,* 4 Mass. App. Ct. 239, 242-243 (1976); *Becket* v. *Building Inspector of Marblehead,* 6 Mass. App. Ct. 96, 104 (1978); *Heald* v. *Zoning Bd. of Appeals of Greenfield,* 7 Mass. App. Ct. 286, 289-291 (1979); *Girard* v. *Board of Appeals of Easton,* 14 Mass. App. Ct. 334, 335-336 (1982); *Planning Bd. of Nantucket* v. *Board of Appeals of Nantucket,* 15 Mass. App. Ct. 733, 737-738 (1983). See also *Alley* v. *Building Inspector of Danvers,* 354 Mass. 6, 7-8 (1968); *Raia* v. *Board of Appeals of North Reading,* 4 Mass. App. Ct. 318, 322 (1976); *Perry* v. *Building Inspector of Nantucket,* 4 Mass. App. Ct. 467, 474-475 (1976). Another provision of the Orleans by-law allows the common owner of lots so protected to redraw the lot lines so as to

---

[3] On March 9, 1971, the area requirement was increased from 15,000 square feet to 20,000 square feet. In 1978 it was further increased to 40,000 square feet, and a provision (§ 4:3-1-3) corresponding to § 4:3-1-2 was adopted protecting the separate identities of adjoining 20,000 square foot lots in common ownership.

change the shape of the lots, "so long as the change does not increase the . . . number of lots."[4]

Under these provisions the board of appeals, over the objection of neighbors, approved the building inspector's issuance of a building permit to the defendant Greer. The board's decision was sustained in the Superior Court, and the neighbors have appealed.

The circumstances are these: In 1958 Greer, together with her husband, now deceased, purchased lot 46 in a subdivision, a lot that contained 43,124 square feet. Two years later they bought the adjoining lot 47, containing 35,022 square feet. In 1962 they built a single-family house, mostly on lot 46, but extending over the line onto lot 47. In 1978 they built an addition entirely on lot 47. In 1984 Greer had a plan prepared which recombined the lots into two new lots, no. 1 containing 40,010 square feet, and no. 2 containing 38,125 square feet.[5] This plan was endorsed "approval not required" by the planning board (G. L. c. 41, § 81P) and was recorded. The house is located on lot 2. The building permit was issued for lot 1.

The contention of the protestors is that the 1984 redrawing of the lot lines was ineffective because Greer no longer had two separate lots, but only one. The two lots had become one for zoning purposes, they argue, when the house was built in 1962 straddling the boundary between the lots. If the lots remained separate, they correctly point out, the placement of the house created a sideyard setback violation.

While the location of the house was certainly evidence (strong evidence, even) of an intent to treat the lots as one, we do not think (and we are aware of no Massachusetts decision that holds) that it had that effect as matter of law. The lots continued to be assessed separately until 1979, and there was evidence that the Greers intended at all times that one of the

---

[4] "§ 4:3-1-4. Such non-conforming lots exempted under . . . [§ 4:3-1-2 or § 4:3-1-3] may be increased in size or shape or their land area recombined without losing this exemption, so long as the change does not increase the actual or potential number of lots."

[5] None of the parties has questioned (or explained) the eleven square foot discrepancy.

lots should be available to be built upon by their daughter. Under the liberal recombination provision of the Orleans by-law, it is not necessarily decisive that the owner has first straddled the boundary and then attended to redrawing the boundary lines, although the safer course, avoiding the risk of an adverse factual determination, would be the reverse. The danger may have seemed remote to the Greers in 1962, when the area requirement for house lots was 15,000 square feet, and both of the lots were separately capable of supporting more than one house.[6] But a purely sequential analysis would defeat the liberal purpose of the provision, which, by incorporation, reaches back to, and speaks as of, a time when the zoning by-law contained no substantial impediment to building an additional house.

That the assessors' office carried the Greer property as one lot beginning in 1979 is a relevant factor but does not require a contrary decision. *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. at 131 n.6. *Heald* v. *Zoning Bd. of Appeals of Greenfield,* 7 Mass. App. Ct. at 291. The assessor who visited the property in 1978 and talked at that time with Dr. Greer could not recall the substance of this conversation. It was open to the board and the trial judge to decline to draw the inference that the decision to tax the property as one lot was based on an election by the Greers.

*Judgment affirmed.*

---

[6] This may have been the case as to lot 46 as well at the time of the 1978 addition. The record does not disclose whether the 1978 increase in the area requirement for house lots from 20,000 to 40,000 square feet preceded the issuance of the building permit for the 1978 addition.