MARY L. IRIS *vs.* TOWN OF HINGHAM.

Plymouth.  December 10, 1936. — June 29, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, & RONAN, JJ.

*Flats.  Boundary.  Seashore.  Evidence,* Relevancy, Of value.  *Practice Civil,* Preliminary question.

Where the location of harbor flats belonging to the owner of a parcel of upland taken by eminent domain was in issue at the trial of the owner's petition for damages, it was error to admit in evidence a plan on which certain flats were marked as belonging to the petitioner, and to instruct the jury that he was the owner thereof.

It was error to admit in evidence, to prove the value of land taken by eminent domain, deeds of parcels of land near by sold in a single transaction, in one of which deeds a cash consideration was recited and in the other there was a certain reservation of use by the grantor for a period of ten years of indeterminate value, and to permit the grantor to give his opinion of the value of the right reserved and of the total consideration for both parcels.

At a trial where the value of land taken by eminent domain is in issue, the determination of the question, whether sales, evidence of which is offered, were of property similar to that taken and were within a reasonable time of the taking, is within the discretion of the trial judge and exceptions to the admission or exclusion of such evidence will not be sustained unless the record discloses that his decision was manifestly erroneous.

PETITION, filed in the Superior Court on May 27, 1933.

The case was tried before *Beaudreau,* J.  It was argued at the bar of this court in December, 1936, before *Rugg,* C.J., *Pierce, Field, Donahue,* & *Qua,* JJ., and after the death

of *Rugg,* C.J., and the resignation of *Pierce,* J., was submitted on briefs to *Lummus, Dolan, Cox,* & *Ronan,* JJ.

*A. E. Whittemore,* (*E. C. Mower, Jr.,* & *L. Kaplan* with him,) for the respondent.

*H. F. Hathaway,* (*J. B. Mahar* & *J. R. Havey* with him,) for the petitioner.

RONAN, J. This is a petition for the assessment of damages on account of the taking, by the respondent on May 3, 1933, of the petitioner's land for the purpose of. a public park. The land taken comprised the middle strip of an approximately triangular piece located between the easterly side of Otis Street and Hingham Harbor. The petitioner's land was bounded on the south by land of public trustees for the use in perpetuity of the inhabitants of the respondent as a bathing beach, playground and recreational center. This land had been so used since 1916 and comprised the base of the triangular piece of land. The parcel north of the petitioner's land was at the apex of this triangular piece of land and was owned by James H. Kimball, Inc. The petitioner's certificate of title showed that the length of the northerly boundary was fifty-three feet and of the southerly boundary three hundred forty-four and sixteen hundredths feet, and that the land was bounded on the west by Otis Street for the distance of five hundred twenty-six and fifty-three hundredths feet and on the east by the mean high water mark of the harbor. The certificate also contained the recital: "Together with the flats in .said Hingham Harbor adjacent to the above described land to low water mark, or so far as the line of private ownership may extend." The entire area of the upland was ninety-eight thousand one hundred fifty square feet, twenty-four thousand three hundred fifty square feet of this total area being located between the easterly bank and the mean high water mark. The petitioner had purchased the property in 1928 for $28,000. A house then upon the premises was used as an inn by the petitioner for the first two years of her ownership, but this was discontinued when she was unable to secure a common victualler's license. The house was destroyed by fire in Novem-

ber, 1932. At the time of the taking, the only structures upon the land were an old stable and a bath house. The assessed valuation of the land and buildings was $20,100 in the years 1931 and 1932 and $10,100 in 1933. There was testimony by various experts. The jury returned a verdict for the petitioner in the sum of $32,500, together with interest. The case is here upon the respondent's exceptions to rulings upon evidence and to certain instructions to the jury.

The respondent excepted to the exclusion of a certificate of title issued by the Land Court showing that one Barnes was the owner of Button Island, "together with the flats appurtenant thereto." The dimensions of this small island are not set forth in the certificate or in the record. It is located in Hingham Harbor, a short distance from three branches of the channel, and about thirteen hundred feet northeasterly of the petitioner's land. At low tide all the flats for the entire distance between the island and some of the uplands bordering the harbor are exposed. The respondent excepted to the introduction in evidence of a plan, prepared by one Gallagher, showing a rectangular area extending at right angles from the petitioner's land to the easterly branch of the channel. The single ground of this exception is that the plan shows this area of flats as belonging to the petitioner. This area contained about six hundred thousand square feet of flats. The respondent also excepted to the instruction that the petitioner was the owner of "those flats that have been described upon that [Gallagher] plan."

The petitioner owned the fee to the flats adjacent to her land and her ownership, by virtue of the colony ordinance of 1641–47, extended to extreme low water or to one hundred rods from the ordinary high water mark, if the low water mark lies beyond that distance. *Commonwealth* v. *Alger,* 7 Cush. 53. *Sewall & Day Cordage Co.* v. *Boston Water Power Co.* 147 Mass. 61. *Butler* v. *Attorney General,* 195 Mass. 79. *Old Colony Street Railway* v. *Phillips,* 207 Mass. 174. *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60. The area and boundaries of the petitioner's flats

were in dispute and the burden was upon her to prove that she was the owner of the property that was taken by the town. *Murphy* v. *Commonwealth*, 187 Mass. 361. *Barnes* v. *Springfield*, 268 Mass. 497.

There is nothing in the record to indicate that the petitioner and the other proprietors of the uplands had entered into any agreement by which the boundaries and areas of different parcels of flats were allotted to their respective parcels of upland. Neither was there any evidence that the petitioner's flats had been located, determined and defined in accordance with G. L. (Ter. Ed.) c. 240, §§ 19–26. The Gallagher plan discloses but a portion of Hingham Harbor and the surrounding shore. It shows three branches of the channel: one on the south abutting the Kimball wharf property and running to property abutting on Otis Street; the middle branch ending a short distance northeast of Button Island; and the northerly branch terminating about one thousand feet easterly of the petitioner's property. The colony ordinance declares a rule of property but prescribes no method for the division of flats. Each upland proprietor is entitled to a fair and proportionate share of the flats under all the circumstances including the width of his lot, the general shape of the shore line, the distance between ordinary high water mark and extreme low water mark, and the entire length of the low water mark which is opposite to his and the other upland properties. Whenever practicable, the width of the seaward end of his parcel of flats should be equal to that proportion of the entire low water mark that the width of his upland at ordinary high water mark bears to the total width of all the uplands to which the flats are adjacent. *Walker* v. *Boston & Maine Railroad*, 3 Cush. 1. *Wonson* v. *Wonson*, 14 Allen, 71. *Tappan* v. *Boston Water Power Co.* 157 Mass. 24. Where the shore line is comparatively straight, the extensions of the side lines of the upland lots are the side lines of the adjacent flats. If the shore line is concave, then the side boundaries of the flats converge, and if the shore line is convex, they diverge. *Valentine* v. *Piper*, 22 Pick. 85. *Gray* v. *Deluce*, 5 Cush. 9. *Porter* v. *Sullivan*, 7 Gray, 441.

*Wonson* v. *Wonson,* 14 Allen, 71. But these general rules cannot be used in a particular case where the physical characteristics of the locus are so peculiar and unusual that the application of these rules would be inequitable. *Walker* v. *Boston & Maine Railroad,* 3 Cush. 1, 22. *Tappan* v. *Boston Water Power Co.* 157 Mass. 24, 29.

The determination of the shape and size of the petitioner's flats does not depend entirely upon the location and area of her lot of land. Her land must be considered in conjunction with all the remaining lots in the vicinity that have adjacent thereto their respective parcels of flats, which together comprise the total area of flats belonging to these upland lots. Regard must be had to the contour of the high water mark and its position relative to the location of the low water mark. The length of both marks must be ascertained. It appears that the southerly end of the petitioner's land is slightly nearer to the southern branch of the channel than the northerly end is to the northern channel. The lot to the south of the petitioner has flats that extend to the south and to the east, but we are unable to locate them because of the lack of evidence. It may be that their location would render it more practical for the petitioner's flats to extend directly toward the east along the northerly bound of the flats adjacent to this southerly lot when the location of that bound is determined. We cannot definitely say, in the absence of a determination of almost every essential physical characteristic of the locus, whether the petitioner's flats extend to both the middle and northerly channels or only to one of them. The petitioner is entitled to the most practical and direct access to the sea. That does not necessarily mean that her flats should extend to the southerly channel because, as we have pointed out, the flats adjacent to the lot south of the petitioner's may be so located that either of the other two channels would be more direct and convenient, as a practical matter, for the petitioner's lot. In the absence of a determination of boundaries and dimensions of the lots located to the north of her lot, we cannot locate the flats adjacent to these lots or determine the northerly side line

of her flats. We do not think, upon this meagre record, that we should attempt to locate the petitioner's flats, as we are apprehensive that an injustice might result when an attempt was made to apply the location to the actual conditions. Furthermore, as there must be a new trial, the petitioner, on whom rests the burden of showing the extent of the respondent's taking, will have an opportunity of furnishing evidence sufficient to enable the trial judge to define her flats in accordance with the general principles above mentioned.

There was error in the admission of the Gallagher plan as evidence of ownership by the petitioner of the rectangular area shown thereon, but the plan could be considered as evidence of the general location of a portion of the shore and harbor. There was error in instructing the jury that the petitioner owned the flats shown in the rectangular area on this plan. *Walker* v. *Boston & Maine Railroad,* 3 Cush. 1. *Commonwealth* v. *Alger,* 7 Cush. 53. *Porter* v. *Sullivan,* 7 Gray, 441. *Attorney General* v. *Boston Wharf Co.* 12 Gray, 553.

The respondent excepted to evidence of the purchase on January 7, 1926, by the town from James H. Kimball, Inc., of parcels of land for the purpose of a public park. This land was located on the harbor side of Otis Street and about fifteen hundred feet south of the petitioner's land. The property was conveyed by two deeds: the first recited that the consideration was $18,000; the second contained a provision (which became binding upon the town by the acceptance of the deed, *Thayer-Foss Co.* v. *Woburn,* 269 Mass. 186) by which the grantor reserved to itself the use and improvement of the granted premises and all profits, rents and income for the period of ten years, with the right to erect, alter or remove any structures, to lease or sublet any part of the premises, and to amend, assign or cancel any existing lease provided no occupancy should extend beyond the aforesaid ten years. The grantor assumed that it was exempt from the payment ·of any property tax during the said period. The deeds were parts of a single transaction, and it is plain that

neither would have been executed and delivered unless the other was also executed and delivered. Both deeds must be considered together. *Skilton* v. *R. H. Long Cadillac La Salle Co.* 265 Mass. 595. The only money that the town paid was $18,000 for the conveyance of the premises described in each deed. Kimball testified that the value of the rights reserved was $15,000, and that he considered the consideration for both deeds was $33,000. It was impossible at the time of the conveyance to determine what income the grantor would receive during the ten-year period. General business conditions might vary between wide limits; the property might not be devoted to the most profitable uses; the business might be suspended by failure to secure the licenses and permits required by law; the tenants might suffer business reverses; the structures might be destroyed by fire; and other various contingencies might be encountered during the stated period. If suitable tenants were available and occupied the property as lessees, even then the amount of income that might be secured during the ten-year period the grantor was to have the use and possession could not be ascertained with any fair degree of precision. *Towle* v. *Commissioner of Banks*, 246 Mass. 161. *City Bank Farmers Trust Co.* v. *Irving Trust Co.* 299 U. S. 433. The market value of such an interest as the grantee acquired could hardly be accurately computed, in view of the fact that the total amount of property taxes that would have been assessed and collected if the property had remained in private ownership during the ten-year period could not have been known at the time of the conveyance. The issue before the jury was the market value of the petitioner's property, and the actual price received for the sale of similar property was competent; but where the actual price could not be accurately and definitely stated in money or in some other consideration the value of which was readily ascertainable like a purchase price mortgage (*Fourth National Bank of Boston* v. *Commonwealth*, 212 Mass. 66; *Bartlett* v. *Medford*, 252 Mass. 311; *Sheehy* v. *Weymouth*, 266 Mass. 165), and depended upon such contingencies as above recited,

then the sale lost its probative weight as evidence, and the jury should not have been permitted to surmise or speculate as to the amount paid for such premises. The whole transaction became remote and collateral to the principal issue. *Old Colony Railroad* v. *F. P. Robinson Co.* 176 Mass. 387, 390. *Rooney* v. *Porter-Milton Ice Co.* 275 Mass. 254, 256. The price as a fact in appropriate instances is competent evidence of the value of similar property, but the price as a matter of opinion and judgment is inadmissible to prove the value of another parcel of land. Kimball's opinion on the value of the consideration paid by the town was as objectionable as if he had testified to his opinion as to the value of the land sold. An opinion of either nature ought not to be received. *Beale* v. *Boston*, 166 Mass. 53. *McCabe* v. *Chelsea*, 265 Mass. 494. The actual sale price would have been evidence that could be used as a standard. Such a sale price had not been shown. The judge was wrong in permitting the cross-examination of the respondent's experts upon the basis that the grantor had received $33,000 for the conveyance of the property to the town, and should not have permitted the petitioner to introduce evidence of this conveyance when the actual consideration could not be stated in terms of money or its equivalent. See *Gardner* v. *Brookline*, 127 Mass. 358, 363; *Sanitary District of Chicago* v. *Boening*, 267 Ill. 118; *Jefferson-Park District* v. *Sowinski*, 336 Ill. 390.

The respondent excepted to the acceptance or rejection of evidence of the sales of various other parcels of land. Actual sales of property shown to be similar to the land taken and within a reasonable time of the taking are admissible in evidence for the purpose of showing the value of the premises in question. No two pieces of property are exactly alike, and much must be left to the discretion of the presiding judge, who, in the first instance, is to determine whether there is such general similarity between the land sold and the land taken that the selling price of the former will furnish a fair criterion of the market value of the latter. In other words, he is to decide whether the evidence of the sale of such land will aid and assist the

jury properly to fix the value of the land in controversy; or whether, upon the whole, the land sold was not shown to be sufficiently similar to the land in question and, therefore, the introduction of evidence of the actual sale of such land would tend only to mislead and confuse the jury. The discretion of the presiding judge is not unlimited, and his decision when affirmatively shown upon the record to be manifestly erroneous will be reversed. *Paine* v. *Boston,* 4 Allen, 168. *Patch* v. *Boston,* 146 Mass. 52. *Lyman* v. *Boston,* 164 Mass. 99. *Fourth National Bank of Boston* v. *Commonwealth,* 212 Mass. 66. *Wright* v. *Commonwealth,* 286 Mass. 371. We cannot say upon this record that any of these rulings has been clearly shown to be beyond the broad, though not unlimited, discretion of the presiding judge, although we ought to add that we should hesitate to disturb the ruling if in some instances it had been the other way. *Lyman* v. *Boston,* 164 Mass. 99. *Stone* v. *Commonwealth,* 181 Mass. 438, 440. *Fourth National Bank of Boston* v. *Commonwealth,* 212 Mass. 66.

*Exceptions sustained.*