WILLIAM C. BECKET & others *vs.* BUILDING INSPECTOR
OF MARBLEHEAD & another.[1]

Essex.    February 16, 1978. — March 14, 1978.

Present: GRANT, ARMSTRONG, & BROWN, JJ.

*Zoning,* Lot, Littoral property. *Words,* "Lot," "Lot size."

The zoning by-law of a town permitted tideland to be included with upland in order to meet a minimum lot area requirement. [98–103]

The tidal area of a lot was properly included with upland area to meet the minimum lot area requirement of a town's zoning by-law, notwithstanding the circumstances that the tidal area was joined to the upland area by a strip of upland 129 feet long and only one foot wide [103–104]; and that the tideland and upland areas were separately bounded and described in the deed to the owner thereof [104].

This court remanded a zoning case for further proceedings to resolve questions of fact relating to a property owner's alleged violation of the lot width requirements of a town's zoning by-law. [104–106]

---

[1] J. Hilary Rockett, trustee of Rockett Realty Trust.

CIVIL ACTION commenced in the Superior Court on May 11, 1976.

The action was tried before *Bennett, J.*

*James T. Ronan* for J. Hilary Rockett.

*Israel Bloch* for the plaintiffs.

*Lawrence J. Markell* for the Building Inspector of Marblehead.

GRANT, J. As originally constituted, Lot 4 on Foster Street on Marblehead Neck was comprised of approximately 41,400 square feet of upland and 7,500 square feet of adjoining tideland located in Marblehead Harbor. On January 20, 1976, the defendant Rockett caused to be recorded in the Essex South District registry of deeds a plan which purported to subdivide Lot 4 into Lots 4A and 4B. The whole of Marblehead Neck constitutes the only Limited Single Residence (L-S) zoning district which exists under the zoning by-law of the town of Marblehead. On January 22, 1976, the building inspector of the town issued permits to Rockett for the construction of a single-family dwelling on each of Lots 4A and 4B. Rockett acquired title to Lots 4A and 4B by a deed dated and recorded on February 23, 1976, and commenced construction shortly thereafter.

The plaintiffs, who are the owners of other properties located on the neck, claimed various violations of the zoning by-law and demanded that the building inspector revoke both permits. The inspector took no action, and the plaintiffs filed the present complaint in the nature of mandamus against the inspector and Rockett.[2] The case was submitted to a judge of the Superior Court on the pleadings, cross motions for summary judgment, and various affidavits and photographs. A judgment was entered which dismissed the complaint so far as it related

[2] The first plaintiff named in the complaint was Marblehead Neck Improvement Association, Inc. The complaint was dismissed as to that plaintiff, and the propriety of that dismissal is not before us. The docket discloses that two individuals who were originally named as plaintiffs were permitted to "withdraw" as parties.

to Lot 4A, declared null and void the building permit issued with respect to Lot 4B, enjoined Rockett from proceeding with the construction of any dwelling on Lot 4B, and ordered Rockett to remove all construction on Lot 4B. Rockett and the building inspector have appealed. The plaintiffs have not appealed, and there is no longer any question with respect to Lot 4A.

The portion of the zoning by-law's table of dimensional regulations which applies to the L-S district requires Lot 4B to have 100 feet of frontage on Foster Street and a minimum "Lot Area" of 20,000 square feet. The subdivision plan discloses the required frontage. The boundaries of Lot 4B have been drawn on that plan in such fashion as to include approximately 13,000 square feet of upland fronting on the street and the entire 7,500 square feet of tideland that had adjoined Lot 4 prior to the subdivision. The only connection between the areas of upland and tideland consists of a strip of upland one foot wide and 129 feet long which lies adjacent to the southerly boundary of Lot 4A. Lot 4A has no means of access to the harbor except over a common easement of record which proceeds over the upland of Lot 4B and other adjoining lots, which predates the subdivision, and which is of no present materiality.

The aforementioned table of dimensional regulations places a number of strictures on the location (and thus on the size) of the dwelling that can be constructed on a lot in the L-S district, but, except for the frontage requirement and a width restriction which does not apply to the one foot strip of upland but which will be considered at the conclusion of this opinion, there is nothing in the by-law which purports to regulate the shape of a lot in the district.[3] It is not disputed that the town's zoning power extends to the 7,500 square feet of tideland here in ques-

[3] It is agreed that the provisions of the Subdivision Control Law (G. L. c. 41, §§ 81K–81GG) have not been accepted in Marblehead. See *Marblehead* v. *Deery*, 356 Mass. 532, 533 n.3 (1969).

tion. See *MacGibbon* v. *Board of Appeals of Duxbury*, 347 Mass. 690 (1964), *S.C.*, 356 Mass. 635 (1970), 369 Mass. 512 (1976); *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 524 (1965); *Crawford* v. *Building Inspector of Barnstable*, 356 Mass. 174, 179, 181 (1969); *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 522–523 (1970); *S. Volpe & Co.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357, 360 (1976). The principal question raised by the appeal is whether the by-law permits that area of tideland to be included in the makeup of Lot 4B in order to meet the 20,000 square foot minimum area requirement. If it does not, the building permit is invalid.

None of the parties has cited, nor have we found, a case which sheds any direct light on the resolution of that question.[4] The motion judge's reasoning and resolution are disclosed by the following passage found in a memorandum filed by him: "It is obvious that all lots on Marblehead Neck not having shore front must contain a minimum of 20,000 square feet under the zoning by-law. Marblehead Neck presents a curious geological formation along its waterfront perimeter. Many parts of the shore line consist of rocky cliffs of steep sides facing the water. Other parts of the Neck consist of rocky coves, with a gradually shelving shore line into the harbor or into the ocean. As one proceeds in a southwesterly direction from the entrance of the harbor up to its end, which is marked by a causeway, the harbor shoals in depth so that at the head of the harbor, the shores and tidelands increase in size. Thus, some waterfront owners own tideland that

---

[4] The plaintiffs have directed our attention to the case of *Van Arsdale* v. *Provincetown*, 344 Mass. 146, 149–150 (1962), in which the court appears to have proceeded on the basis that the rear lot line of the locus was the line of mean high water. The value of that case as precedent in this case is doubtful, as we do not know (1) whether the owner of the upland in that case also owned the adjacent tideland or (2) whether or how the Provincetown by-law defined a rear lot line. The instant by-law contains an express definition of a rear lot line which need not be set out or explored.

may consist of no more than a foot or two from mean high water to mean low water—that is to say, those owners, whose shore front consists of steep rocky cliffs. Other shore front owners, such as the defendant Rockett, own waterfront land the shore front of which is not precipitous, but rather consists of rocky beach and shoals, so as to include a distance between mean high water to mean low water of as much as 60, 70 feet. It thus appears that an owner whose shore front is precipitous necessarily must have approximately 20,000 square feet of uplands in order to comply with the zoning by-law. The defendant's contention would mean that a shore front owner fortuitous enough to have a gently shelving shore line, would be required only to have so much upland as, added to his tidelands, would achieve the required 20,000 square foot area. The construction urged by the defendant would result in lots on the upland shore front of Marblehead Neck of gross disparity in size. Marblehead Neck, for at least the past forty years, has consisted generally of large, and rather extravagent summer homes. Earlier in this century, and obviously before the enactment of the current zoning by-laws there were constructed, and still exist, small summer cottages, on small lots. I find that the adoption of the current zoning by-law was designed to prevent the construction of residences on small lots. I find that the interpretation urged by the defendant would result in defeating the objectives of the zoning by-law, here in issue, and would destroy the general structure of the Marblehead Neck zoning taken as a whole. Small upland lots would inevitably appear in those areas where the shore line presents a gentle slope, whereas all other owners, those with no waterfront and those with steep waterfronts, would be held to the minimum on their upland area."[5]

---

[5] Most of the statements in the quoted passage which resemble findings of facts rest on judicial notice rather than anything found in the pleadings, the affidavits or the photographs. There has been no objection to this procedure.

The foregoing displays the commendable virtues of uniformity, lessening congestion and preservation of amenities (see G. L. c. 40A, §§ 2 and 3, as in effect prior to St. 1975, c. 808, § 3), but we think it fails to come to grips with the express definitions of the words "Lot" and "Lot Area" set out in the Marblehead zoning by-law. A "Lot" is there defined as "[a] single area of land defined by metes, bounds, or boundary lines in a duly recorded deed or shown on a duly recorded plan." The relevant portion of the definition of "Lot Area" (the words which are employed in the dimensional table) was "[t]he horizontal area within the exterior lines of the lot, exclusive of any area in a public or private street or way." The true objective of the inquiry is the reasonable construction of the quoted words (see *Perry* v. *Building Inspector of Nantucket*, 4 Mass. App. Ct. 467, 472 [1976], and cases cited) when they are considered in light of the principle that "[t]he by-law [is] the expression of the voters of the town, all of whom must be presumed to have been familiar with the physical characteristics of the locality and the general nature of the neighborhood." *Milton* v. *Donnelly*, 306 Mass. 451, 459 (1940). See also *Tracy* v. *Board of Appeals of Marblehead*, 339 Mass. 205, 208 (1959); *Van Sant* v. *Building Inspector of Dennis*, 352 Mass. 289, 292 (1967).

Rockett's ownership of the 7,500 square foot area between the mean high and mean low water lines, like that of other littoral proprietors similarly situated, stems from the colonial ordinance of 1641–1647. *Iris* v. *Hingham*, 303 Mass. 401, 403 (1939).[6] Such tidal areas are commonly thought of as land (see *Opinion of the Justices*, 365 Mass. 681, 684–688 [1974]; *Barry* v. *Grela*, 372 Mass.

---

[6] It does not appear that the express reference to that area in the deed to Rockett was intended as anything more than an indication that no prior owner has severed the tideland from the upland. See *Mayhew* v. *Norton*, 17 Pick. 357, 360 (1835); *Porter* v. *Sullivan*, 7 Gray 441, 445, 447 (1856); *Henry* v. *Newburyport*, 149 Mass. 582, 585 (1889).

278 [1977]), and we think it of some significance that the
voters of a coastal community, who must have had at
least a working understanding of the rules by which the
boundaries of tidelands are determined (see *Iris* v. *Hing-
ham,* 303 Mass. at 404–405) and can shift (see *East Boston
Co.* v. *Commonwealth,* 203 Mass. 68, 75 [1909]; *Michael-
son* v. *Silver Beach Improvement Assn.,* 342 Mass. 251,
253–254, 258 [1961]), took care to define a "Lot" in terms
of an "area of land defined by metes, bounds, or boundary
lines in a duly recorded deed or shown on a duly recorded
plan." Those same voters must be taken to have been
aware of the varying topographical features which con-
cerned the motion judge when they adopted a townwide
definition of "Lot Area" as the "*horizontal* area within
the exterior lines of [a] lot" (emphasis supplied). And we
think it of particular significance that the only express
qualification of that definition was found in the immedi-
ately ensuing words "exclusive of any area in a public or
private street or way." Compare *Miller* v. *Board of Ap-
peals of Brookline,* 356 Mass. 659, 661 (1970).

We think the foregoing considerations all point to the
conclusion that the provisions of the by-law which have
been discussed and which were in effect when the build-
ing permit was issued for Lot 4B permitted the 7,500
square feet of tideland to be counted in determining
whether the 20,000 square foot minimum area require-
ment had been met. We believe this conclusion is
strengthened by the fact that some three months after
the issuance of that permit the town meeting adopted an
amendment of the by-law definition of "Lot Area" which
specifically provides that the tidelands on Marblehead
Neck must be excluded from consideration in determin-
ing whether the minimum area requirement is met with
respect to lots which are located there.[7] The record is

---

[7] It is alleged in the complaint and admitted in both answers that
the by-law definition of "Lot Area" now reads: "The horizontal area
within the exterior lines of the lot, exclusive of any area in a public

silent on whether the amendment was evoked by the present dispute. Compare *Hebb* v. *Lamport*, 4 Mass. App. Ct. 202, 206–207 (1976). Whatever the reason for the amendment, its present significance lies in the fact that the restriction of its application to Marblehead Neck confirms the conclusion that the original concept of "Lot Area," which still prevails in all the other coastal areas of the town, comprehended tidelands such as those owned by Rockett and included within the boundaries of Lot 4B.

We turn now to certain other contentions advanced by the plaintiffs which were raised by the pleadings, which do not appear to have been passed on by the motion judge, which have not already been considered in this opinion, and which merit discussion.

The plaintiffs point to the strip of upland one foot wide and 129 feet long which separates the remainder of the upland of Lot 4B from the tidal area thereof and argue that the virtual inaccessibility of the latter from the former and the inutility of the latter are somehow inconsistent with any reasonable construction of the words "Lot" and "Lot Area" as they were defined when the building permit was issued. We find nothing in the by-law which lends support to the argument. It is matter of common knowledge that there are many areas along our coast line, particularly to the north of Boston, in which different portions of what is now upland are inaccessible from others by reason of the presence of cliffs or steep bluffs. If the town meeting, which defined "Lot Area" in terms of "horizontal area", had intended to require that every portion of a lot be accessible or somehow available for use by its owner, it could have said so. See *Vetter* v. *Zoning Bd. of Appeal of Attleboro*, 330 Mass. 628, 630 (1953); *Clarke* v. *Board of Appeals of Nahant*, 338 Mass. 473, 476, 477–478 (1959); *Sorenti* v. *Board of Appeals of Wellesley*,

---

or private street or way; *and in a Limited Single Residence, exclusive of any horizontal area subject to oceanic tidal action and below mean high water. . . .*" The amendment appears in italics.

345 Mass. 348, 350 n.3, 351 (1963); *Miller* v. *Board of Appeals of Brookline,* 356 Mass. at 660.

Nor do we see why any inference favorable to the plaintiffs should be drawn from the fact that the tideland and upland areas are separately bounded and described in the deed to Rockett.[8] The usual construction of the word "lot" in a zoning context ignores the manner in which the components of a total given area have been assembled and concentrates instead on the question whether the sum of the components meets the requirements of the by-law. See *Vassalotti* v. *Board of Appeals of Sudbury,* 348 Mass. 658, 661 (1965); *Miller* v. *Board of Appeals of Brookline,* 356 Mass. at 661–662; *Gaudet* v. *Building Inspector of Dracut,* 358 Mass. 807, 808 (1970). We see nothing in the instant by-law which suggests that a different construction was intended.

We hold that the building inspector acted properly when he counted the area of the tideland of Lot 4B in the course of his determination that that lot met the 20,000 square foot minimum area requirement of the by-law as it then read.

We turn, finally, to the plaintiff's contention that Lot 4B violates a 1974 amendment of the notes to the table of dimensional regulations which reads: "The width of a lot from the street line to the principal structure thereon shall not be reduced by more than twenty-five percent without a special permit from the Board of Appeals." The undisputed facts are these: Rockett has no special permit from the board of appeals; according to the subdivision plan and the plot plan submitted to the building inspector with the application for a building permit, the relevant portions of the side lines of Lot 4B commence at defined points in the side line of Foster Street which are 100 feet distant from each other, leave those points at angles to the street line and run to other points, and then turn and run by different courses to still further points which are

---

[8] See note 6, *supra.*

well to the rear of the proposed dwelling; there is no point (until one arrives at the aforementioned one-foot wide strip of upland) at which the sidelines run on parallel courses.

The complaint alleges, and both answers deny, a violation of the above quoted provision. An affidavit of the registered land surveyor who drew the subdivision and plot plans[9] asserts that "with respect to lot 4B in the area lying between the street line and the building, the narrowest point between the side lines is 75 feet and a reduction to 75 feet is permitted." The counter affidavit filed by the plaintiffs makes no reference to the question now under consideration. Nor does the memorandum filed by the motion judge.

It is clear from the argument advanced by the plaintiffs in their brief that they have overlooked the by-law's definition of "Lot Width" as "[t]he mean horizontal distance between the lot side lines measured perpendicular to the mean direction of the lot side lines." It is far from clear that the surveyor considered that definition in drawing the plans or preparing his affidavit. We have not been favored with any explanation whether the quoted definition has a particular meaning commonly understood by engineers or surveyors, or of how the definition should be applied to a lot having the configuration of Lot 4B. It strikes us that, even if the meaning and manner of application were agreed to, engineering calculations would still be required before a proper determination could be made whether Lot 4B violates the prohibition against narrowing the width of a lot in the area between the street line and the principal structure on the lot. We conclude that there are unresolved questions of fact not within our province or competence which will have to be heard and decided in the Superior Court before there can

---

[9] This affidavit was filed in Rockett's behalf but was relied on by both defendants in support of their respective motions for summary judgment.

be any resolution of the legal issue presented by the two provisions of the by-law which have been quoted in this part of our opinion. Until such time as those questions and that issue are heard and decided, the Superior Court will not be in a position to determine the propriety of the issuance of the permit to build on Lot 4B.

So much of the judgment as relates to Lot 4B is vacated, and the case is remanded to the Superior Court for the further proceedings required by this opinion; costs of appeal are not to be awarded to any party.

*So ordered.*