807

Alexander S. BEAL, Trust
v.
**BOARD OF ASSESSORS
OF THE CITY OF BOSTON**

**No. 109877**

Appellate Tax Board
Trial Court of the
Commonwealth of Massachusetts

**July 28, 1982**

Arthur D. Altman, Esq., for the appellant.
John Gaffney, Esq., for the appellee.

This is an appeal under the formal procedure from the refusal of the appellee to abate taxes for the fiscal year 1980 on real estate owned by and assessed to the appellant in the appellee City of Boston.

These findings of fact and report are made pursuant to a request by the appellant, under the provisions of G.L. c. 58A, sec. 13, as amended, and Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board.

## FINDINGS OF FACT AND REPORT

On January 1, 1979, the pertinent tax date for the fiscal year in question, the appellant was the owner of a parcel of real estate located at 25-35 Doane Street (also known as 15 Broad Street) consisting of an office building and 7,589 square feet of land, more or less.

The appellee valued the property at $520,000 and assessed to the appellant a tax thereon, at the rate of $252.90 per $1,000, in the amount of $131,508. One-half the tax, based on the 3-year average, was paid without incurring interest on such average.

On October 29, 1979, within thirty days of the mailing of the tax bills, the appellant appealed in writing to the appellee on a form approved by the Commissioner of Revenue, for an abatement of the tax, including in his application a sufficient description of the subject premises. The application was refused by reason of the failure of the appellee to act on the application prior to the expiration of three months from the date of filing, and thereafter, on April 4, 1980, the appellant filed a seasonable appeal with this Board from such refusal of the appellee to abate the tax.

The premises consist of a 10-story office building and a basement, located in the financial-insurance district of the city.

As to evidence of value, the appellant introduced copies of previous determinations of value by the Board for FY 1976, 1977, 1978 (Exhibit 3) and FY 1979 (Exhibit 3A); see attachments at the end of these Findings and Report. The Board's FY 1979 determination of value (Exhibit 3A) is in the amount of $204,453.29. The Board assumes the appellant, as in the appeal of **Irving H. Busny v. Assessors of Boston,** docket number 109874 (Findings in regard to which were promulgated July 27, 1982); and the appeal of **John Grealish v. Assessors of Boston,** docket number 107792 (Findings in regard to which were promulgated July 21, 1982), is relying upon the provisions of G.L. c. 58A, s. 12A requiring the appellee to satisfy the Board that the increased valuation in the year in question over the Board's previous determination of value, was warranted. Next, the appellant called an expert witness who stated he previously testified before this Board, that he had found no substantial difference in the year in question from the last time he testified. He then formulated an opinion of value, using an effective tax rate of $114.70 and net income before taxes and return on investment of $166,490, of $695,490. On cross-examination and in response to questions put by the Commissioner conducting the hearing, this witness stated that for FY 1980, the year in question, he had calculated a gross potential income of $376,000 on the basis of 57,862 square feet of rentable area and estimated expenses of about $210,000 to arrive at his net income figure of $166,490, but also stated he did not have a breakdown of his income and expense figures with him. He stated the income and expense figures were given to the City on a Requisition Form, but such form, or a copy thereof, was not introduced in evidence. The last time this witness testified as to valuation of the subject property was for fiscal years 1976 and 1977. His figure for net income for fiscal year 1976 was $150,016. He did not have a figure for net operating income for FY 1979, except as on the said Requisition Form. But he nevertheless repeated that there was no substantial difference in the net income from fiscal year 1979 to fiscal year 1980. He explained that the $16,400 difference in the net income figure from fiscal year 1977 and fiscal year 1980 was arrived at "on the Requisition Form that was filed with the City of Boston." He also stated that the increase was due to new tenants paying more rent, but was unable to give the amount of the lease rent of the new tenants or to state the terms of the new leases or the date they moved in except to say "sometime in 1979." The rent of the new tenants was included in the 1980 appraisal but he did not know how much it was. Also, as to the leases, he stated that some had tax escalation clauses for FY 1980 but was not able to give the amount of the income attributable to that source. Much of the rest of this witness' testimony was characterized by similar vagueness.

In the Board's judgment, this witness' conclusion of fact that there was no substantial difference in the income and expense figures appertaining to the subject property in the previous fiscal year and in the fiscal year in question is unsupported by his testimony as summarized above; wherefore, the Board gave little or no weight to his opinion of value.

As to valuation, the appellee relied upon the testimony of John Driscoll, an Assistant Assessor of the City of Boston. Mr. Driscoll had previously testified as a witness on valuation for the appellee in the appeal of **Irving H. Busny Trust v. Assessors of Boston,** docket number 109874, promulgated July 27, 1982. As he did in the **Busny** appeal, Mr. Driscoll considered all three approaches to value, but relied upon the market data approach to formulate his opinion of value. For comparable sales, he used the same sales as he did in the said **Busny** appeal, namely: 84 State Street and 60 Congress Street. The deeds pertaining to the sales of these properties were introduced in evidence in those appeals and on the

appellant's motion were incorporated in the evidence of the instant appeal. Said deeds indicate that the 84 State Street property sold on November 10, 1978 for $3,350,000 and the 60 Congress Street property sold on December 19, 1980 for $2,190,000. According to Mr. Driscoll, the subject property is located about one block or less from 84 State Street, and about two blocks from 60 Congress Street. Mr. Driscoll testified that the two properties were comparable to the subject property in area, function, use, age and in projected potential gross income. The general area in which the subject premises is located is good, according to this witness. It is surrounded by new buildings under construction, such as One Post Office Square, the new hotel office building tower, a new office tower building on Devonshire Street and a new office tower building at the corner of Milk and Devonshire Streets. Fanueil Hall Market is in the area; also the new construction at 60 State Street and 28 State Street.

Based on these sales and taking the per square foot cost on both and applying that cost to the gross area of the subject building, he arrived at his opinion of value, as of January 1, 1979, of $2,920,000. In answer to questions put by the Commissioner, Mr. Driscoll further answered that the 84 State Street property indicated a per square foot cost of $35.00 and the 60 Congress Street property of $46.00 per square foot. Because the sale of 60 Congress Street occurred in December, 1980, he adjusted that cost back to January 1, 1979, also at $35.00, and on that basis, and on his experience, assigned a per square foot cost of $35.00 to the subject building to formulate his opinion of value.

There was evidence, and the Board finds, that the determination of value made by the Board for FY 1979 (Exhibit 3A, see attachment) was arrived at by way of the capitalization of net income method. Income and expense figures related to said FY 1979 and the tax factor was the result of the application of a ratio

of 22.4% to the tax rate for that year. The ultimate value of said $204,453.29 was the product of the application of said ratio of 22.4% to the Board's fair cash value, thus determined, of $912,737.94.

The Board finds that the appellant's witness' opinion that there was no substantial difference in the income and expense figures appertaining to FY 1980, the year in question, was not supported by his testimony, thus leaving the appellant with the Board's said previous determination of value for FY 1979 as its only evidence of value for the subject year.

The Board finds that the appellee's evidence to justify a greater valuation in the year in question over the Board's previous determination of value consists of the testimony of its witness that he used the market data approach to value and relied on comparable sales (which are in evidence) to formulate his opinion of value.

Insofar as it is a question of fact and for the reasons set forth in our Opinion which follows, the Board finds that the appellee has sustained its burden to satisfy the Board that the increased valuation in the year in question over the Board's previous determinations of value was warranted, under G.L. c. 58A, s. 12A, as in effect in FY 1980.

## OPINION

G.L. c. 58A, s. 12A as most recently amended by St. 1978, c. 580, s. 13, reads:

"If, at a hearing of an appeal relative to the assessed fair cash valuation of property brought within three years after a determination by the appellate tax board of the valuation thereof, it appears that the assessed fair cash valuation is greater than the valuation as so determined, the burden shall be upon the appellee to satisfy the board that the increased valuation was warranted and upon failure so to do the board may, in its discretion, tax as costs against the appellee, in addition to witness

fees and expenses of service of process, the whole or any part of the reasonable expense of the taxpayer incurred in the preparation, entry and trial of his appeal. Should the board find that the increased value was warranted then it may tax such costs against the appellant. Such costs shall be certified and paid as provided in section twelve."

Said Section 12A was added by St. 1943, c. 430. The 1978 amendment made no substantive changes in the original enactment; it merely substituted the words "assessed fair cash valuation" for "assessed value" in the first sentence, and "valuation" for "value" throughout.

The legislative history of said St. 1943, c. 430 consists of Senate No. 308, House 1787 and House 1806. Said House bills were successuvely substituted for said Senate 308, which was introduced by Petition of the Massachusetts Real Estate Exchange by Charles W. Bowker, Jr., for "legislation to regulate procedure before the Appellate Tax Board, and relating to the taxation of costs, in certain cases." Not only is there little in the legislative history of Section 12A to assist in construing the statute, but no cases decided by the SJC have arisen thereunder.

Presumably Section 12A was intended as a statutory device to curb the practice in some communities of disregarding the Board's determination of value and arbitrarily increasing assessed valuations in a year subsequent to the year of decision. This practice resulted in the harassment of the owner of the property involved, necessitating that he incur unnecessary expenses and the expenditure of his time to pursue abatement remedies for relief from overvaluation.

In cases where the increased valuations were unjustified, the Board was empowered by said Section 12A to tax as costs against such communities, "in addition to witness fees and expenses of service of process, the whole or any part of the reasonable expense of the taxpayer incurred in the preparation, entry and trial of his appeal."

In the instant appeal, the Board's previous determination of value was arrived at by way of the capitalization of net income method. That method depends for its reliability upon the accuracy of the income and expense figures appertaining to the date of the appraisal, and a capitalization rate to be applied against net income to obtain value which combines acceptable percentages for depreciation and return and a percentage for taxes which reflects the proper ratio for disproportionate assessment.

In the instant appeal, the appellee arrived at a greater valuation in the year in question over the Board's previous determination by using the market data approach to value. That method depends for its validity on sales of property adjudged to be comparable to the property sought to be valued. It is unrelated to the income approach to value, except that it is conceivable that if accurate income and expense figures for the same appraisal date are used and a dependable capitalization rate is developed, the value obtained under the income method should approximate the value obtained by way of the sales approach.

In any event, the Board is satisfied that the appellee's witness formulated his estimate of value on the basis of credible evidence of the sales of comparable property.

The Board is of opinion therefore that the appellee has sustained its burden of satisfying the Board that the increased valuation in the year in question over the Board's previous determination of value was warranted. Since the appellant introduced no credible evidence of value other than the Board's said previous determination, our Decision is for the appellee.

The Board notes that the sale of the Congress Street property occurred December 19, 1980, about two years after the assessment date of January 1, 1979, and the State Street property sale

occurred November 10, 1978. For authority that comparable sales occurring from 2-1/4 years before the taking to 2-1/2 years after the taking, in an eminent domain case, are admissible, see **Grenier v. New Bedford,** 4 Mass. App. Ct. 152, 156-157; see also **Iris v. Town of Hingham,** 303 Mass. 401, 408-409.

Neither party filed briefs or requests for rulings of law.

For other appeals involving questions arising under said Section 12A, see **Allendale Associates v. Assessors of Pittsfield,** ATB, docket nos. 109676, 113889, promulgated May 10, 1982; and **Vara-Sorrentino Realty Trust v. Assessors of Provincetown,** ATB, docket nos. 97451, 105510, promulgated April 21, 1981. Neither of those cases was appealed to the Supreme Judicial Court. See also **John Grealish v. Assessors of Boston,** docket no. 107692, promulgated July 21, 1982; **Irving H. Busny v. Assessors of Boston,** docket no. 109874, promulgated July 27, 1982.

Our decision for the appellee was promulgated August 4, 1981.

**APPELLATE TAX BOARD**
**By John P. Mulvihill, Chairman**
A True Copy
Attest: **Richard B. Willis**
**Clerk of the Board**

---

### Docket No. 84088, 88964, 95184

**ALEXANDER S. BEAL, TRUST, Appellant**
**BOARD OF ASSESSORS OF THE CITY OF BOSTON, Appellee**

#### DECISION

Decision for the appellant; abatement(s) granted in the respective amount(s) and according to the schedule set forth below.

The Board finds the fair cash value of appellant's property to be as set forth below. On the basis of the evidence in this case of the assessment practice in the City of Boston, the Board further finds that the appellant's property should be assessed at 26.8% of fair cash value.

| Docket Number | Year | Location | Assessed Valuation | Tax Assessed | Fair Cash Value | 26.8% of FCV | Abatement |
|---|---|---|---|---|---|---|---|
| 84088 | 1976 | 25 Doane 35 | $520,000 | $102,284.00 | $928,307 | $248,786 | $53,347.79 |
| 88964 | 1977 | " | " | $131,508.00 | $863,298 | $231,364 | $72,996.04 |
| 95184 | 1978 | " | " | " | " | " | $72,996.04 |

**APPELLATE TAX BOARD**

Date: May 17, 1979

### Docket No. 101384
**ALEXANDER S. BEAL, TRUST, Appellant**
**BOARD OF ASSESSORS OF THE CITY OF BOSTON, Appellee**

#### DECISION

Decision for the appellant: abatement(s) granted in the respective amount(s) and according to the schedule set forth below.

The Board finds the fair cash value of appellant's property to be as set forth below. On the basis of the evidence in this case of the assessment practice in the City of Boston, the Board further finds that the appellant's property should be assessed at the percentage of fair cash value as set forth below.

| Year | Location | Assessed Valuation | Tax Assessed | Fair Cash Value | % | % of Fair Cash Value | Abatement |
|---|---|---|---|---|---|---|---|
| 1979 | 25 Doane 35 | $520,000 | $131,508 | $912,737.94 | 22.4 | $204,453.29 | $79,801.76 |

**APPELLATE TAX BOARD**

Date: Oct. 12, 1979